**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jeffrey Darrell TEITLOFF,**
**Defendant–Appellant.**

No. 94–3597.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1995.

Decided May 18, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied July 13, 1995.*

* Richard S. Arnold, Chief Judge, and McMillian, Circuit Judge, would grant the suggestion for rehearing en banc.

Sam T. Heuer, Little Rock, AR (argued), for appellant.

Kenneth F. Stoll, Asst. U.S. Atty., Little Rock, AR (argued), for appellee.

Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MURPHY, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Jeffrey Teitloff appeals his conviction for using a social security number not assigned to him, in violation of 42 U.S.C. § 408(a)(7)(B) (1988). Teitloff contends that the district court[1] improperly denied his motion to suppress the evidence seized incident to his arrest and that there is insufficient evidence to support his conviction. We affirm.

## I. BACKGROUND

A grand jury returned an eight-count indictment against Teitloff for offenses relating to stolen motor vehicles and tampering with vehicle identification numbers. On October 13, 1993, United States deputy marshals executed an arrest warrant for Teitloff issued by the United States District Court. At the time of his arrest, Teitloff gave the deputies an Arkansas driver's license that contained his photograph, but the name, address, and social security number of Ronald Leslie Whitehead.

After his arrest, Teitloff moved to suppress the evidence seized from his business, arguing that local police officers had unlawfully searched the premises before a search warrant had been issued. The district court determined that the information used to obtain the search warrant was itself obtained in violation of the Fourth Amendment. Therefore, the court granted Teitloff's motion to suppress the evidence, and the indictment was dismissed.

In connection with the falsified driver's license recovered when Teitloff was arrested, the grand jury returned an indictment against Teitloff for one count of misrepresenting a social security number. Teitloff again filed a motion to suppress, arguing that if an arrest warrant had not been issued on the earlier indictment, the deputies would not have discovered the driver's license. Teitloff argued that under the "fruit of the poisonous tree" doctrine, *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963), the government was barred from relying on evidence that was obtained incident to his arrest. The district court adopted the magistrate judge's findings and recommendation that: (1) the discovery of the driver's license was sufficiently attenuated from the original illegal intrusion; and (2) the arresting deputies acted in an objectively reasonable manner and in good faith. Therefore, the court denied Teitloff's motion to suppress the evidence.

At trial, an Arkansas revenue agent described the process for obtaining a driver's license. In order to receive a duplicate license, an applicant must submit two documents from a specific list of acceptable identification. After the agent processes this information, the applicant signs an oath verifying that the information contained on the

1. The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

driver's license is correct. The agent then photographs the applicant and laminates the license.

On September 7, 1993, the Arkansas Revenue Department issued a duplicate driver's license that contained Ronald Whitehead's name, address, and social security number. The issuing agent testified that an auto insurance policy and a DD 214 Military Record were submitted as proof of identification. The duplicate license, which contained Teitloff's photograph and was found in his possession, was admitted into evidence. Ronald Whitehead testified that he did not apply for a duplicate license and that one of his DD 214's was missing. A representative for the Department of Health and Human Services certified that the social security account number listed on the duplicate license was not issued to Jeffrey Teitloff.

The jury found Teitloff guilty as charged. The district court sentenced Teitloff to four months incarceration at a half-way house, three years supervised release, and a $2000 fine. The court stayed the execution of Teitloff's sentence pending a determination of his appeal to this Court.

## II.   DISCUSSION

### A.   *Motion to Suppress*

■ Teitloff argues that the evidence seized incident to his arrest should have been suppressed because he was the victim of a Fourth Amendment violation. We review the district court's denial of a defendant's motion to suppress for clear error. *United States v. Layne*, 973 F.2d 1417, 1420 (8th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1011, 122 L.Ed.2d 160 (1993). The district court's decision must be affirmed "unless it is not supported by substantial evidence on the record; it reflects an erroneous view of the applicable law; or upon review of the entire record, [we are] left with the definite and firm conviction that a mistake has been made." *Id.*

The exclusionary rule operates as a judicially created remedy to safeguard against future violation of a defendant's Fourth Amendment rights. *United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 3411–12, 82

L.Ed.2d 677 (1984). In *Leon*, the Supreme Court announced that a good-faith exception to the exclusionary rule applied when a search is conducted pursuant to a warrant that is later determined to be invalid. The Court stated:

> If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment. In short, where the officer's conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that ... the officer is acting as a reasonable officer would and should act in similar circumstances.

*Id.* at 919–20, 104 S.Ct. at 3419 (quotations and citations omitted).

■ In this case, the United States deputy marshals discovered the falsified driver's license while acting on the authority of a validly issued arrest warrant, which was later determined to be supported by evidence that was obtained in violation of Teitloff's Fourth Amendment rights. The deputies were not involved and did not have any knowledge about the prior unlawful searches at Teitloff's business. There is absolutely no indication that the deputies were not acting in an objectively reasonable manner when they executed the arrest warrant. We conclude that the district court properly admitted the evidence seized incident to Teitloff's arrest.

### B.   *Sufficiency of the Evidence*

■ In reviewing the sufficiency of the evidence underlying a jury verdict, we examine the evidence in the light most favorable to the verdict, giving the government the benefit of all reasonable inferences that tend to support it. *United States v. Ivey*, 915 F.2d 380, 383 (8th Cir.1990). "We reverse only if we conclude that a reasonable fact-finder must have entertained a reasonable doubt about the government's proof of one of the offense's essential elements." *Id.*

 In order to convict a defendant under 42 U.S.C. § 408(a)(7)(B),[2] the government must prove that the defendant: (1) for any purpose; (2) with the intent to deceive; (3) represented a particular social security account number to be his or another person's; (4) which representation was false. *United States v. McKnight*, 17 F.3d 1139, 1143 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 275, 130 L.Ed.2d 192 (1994).

 Relying on *McKnight*, Teitloff argues that mere possession of a driver's license bearing another person's social security number cannot support a conviction under § 480(a)(7)(B). He argues that there was no evidence that he was the person who actually applied for the duplicate driver's license. Alternatively, Teitloff claims that he did not technically "use" the social security number because the computer system automatically provided this information when he supplied Whitehead's identification documents to the Arkansas revenue agent.

Teitloff misconstrues the holding of *McKnight*, where two of the panel members concurred and stated: "We write separately to make explicit that possession of an identification card bearing a false social security number can, in some instances, provide a sufficient predicate for a jury to properly infer that a defendant falsely represented a social security number in violation of 42 U.S.C. § 408(a)(7)(B)." *Id.* at 1146. This is just such a case.

There was evidence that Whitehead did not apply for the duplicate driver's license, that some of his military records were missing, and that Teitloff's picture appeared on the laminated license. From this evidence, a reasonable jury could have inferred that Teitloff used Ronald Whitehead's identification papers, and thus his social security number, to obtain the duplicate driver's license. Despite Teitloff's protestations to the contrary, the jury simply refused to believe that some phantom third-party, rather than Teit-

loff himself, procured the duplicate license. Although Teitloff argues that he did not orally misrepresent the social security number to the revenue agent, he signed the application verifying that this information was correct. We conclude that there was sufficient evidence for the jury to rationally infer that Teitloff represented a false social security number in violation of § 408(a)(7)(B).

### III. CONCLUSION

Accordingly, we affirm Teitloff's conviction.

---

**2.** Section 408(a)(7) provides in relevant part: Whoever ... for the purpose of causing an increase in any payment authorized under this subchapter ... or for any other purpose ... (B) with intent to deceive, falsely represents a number to be the social security account num-

ber assigned by the Secretary to him or to another person, when in fact such number is not the social security account number assigned by the Secretary to him or to such other person ... shall be guilty of a felony....