UNITED STATES of America,
Plaintiff,

v.

Thomas R. MEIXNER, Defendant.

No. 00–CR–20025.

United States District Court,
E.D. Michigan,
Northern Division.

Jan. 24, 2001.

Michael J. Hackett, Lyon & Hackett, Cheboygan, MI, Michael J. Hackett, Jennifer M. Galloway, Lynch, Gallagher, Mount Pleasant, MI, for Thomas R. Meixner.

Janet L. Parker, U.S. Attorneys Office, Bay City, MI, for U.S.

### OPINION AND ORDER DENYING GOVERNMENT'S MOTION FOR RECONSIDERATION

LAWSON, District Judge.

On October 23, 2000, this Court filed a memorandum opinion and order granting the defendant's motion to suppress evidence. The Court found that a police officer's warrantless entry into the defendant's home was unlawful because it was not supported by either probable cause or exigent circumstances. Further, this Court held that the information obtained by the officer during the illegal entry tainted the affidavit that was subsequently submitted in support of a search warrant that was eventually issued authorizing the search of the defendant's home. *United States v. Meixner*, 2000 WL 1597736 (E.D.Mich.2000).

The government has now filed a motion for reconsideration pursuant to E.D.Mich.LR 7.1(g)(3),[1] which states:

---

1. L.R. 7.1 governs motion practice in civil cases. LCrR 12.1(a) states that "[m]otions in criminal cases shall be filed in accordance with the procedures set forth in L.R. 7.1."

[T]he court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case.

The government contends that this Court applied the wrong law legal standard in evaluating the level of suspicion that the officer must have to justify a warrantless entry in the circumstances of this case, and that the Court erroneously rejected the application of the good faith exception to the exclusionary rule.

## I.

## A.

On the issue of Michigan State Police Officer Douglas Tanner's warrantless entry into the defendant's home in Gladwin, Michigan, this Court held that warrantless entries and searches of a person's home are presumptively unreasonable, that the government bears a heavy burden to demonstrate exigent circumstances that may excuse the failure to obtain a search warrant, and that one exception within the scope of exigent circumstances was that a police officer may enter and search a home when the officer has a reasonable belief that a person within needs immediate aid. *Meixner*, 2000 WL 1597736, *6–*7. After reviewing applicable precedent, this Court concluded:

The test is an objective one: the police officer must be able to point to "specific and articulable facts" at "the moment of the warrantless entry" that would lead a reasonable, experienced law enforcement officer to believe that someone inside the dwelling required immediate assistance. *See United States v. Morgan*, 743 F.2d 1158, 1162, 1163 (6th Cir.1984),

*United States v. Arch*, 7 F.3d 1300, 1304 (7th Cir.1993).

*Id.* at *7.

The Court thereafter concluded that the government failed to make the required showing because there was no evidence in the record which established—*i.e.*, which directly proved or from which reasonable inferences could be made—that there was someone inside the Meixner home who might require immediate aid at the time Officer Tanner made his warrantless entry. *Id.* at *9–*10. This Court noted that in cases applying other exigent circumstance exceptions, the Court of Appeals for the Sixth Circuit has held that the government must prove more than a "mere possibility" of an emergency. *Id.* at *7, citing *United States v. Radka*, 904 F.2d 357, 362 (6th Cir.1990) (dealing with the loss/destruction of evidence exception). That standard was recently reaffirmed in *United States v. Ukomadu*, 236 F.3d 333 (6th Cir.2001).

In its motion, the government has attempted to recast the Court's holding as requiring "positive proof that an emergency existed," rather than reasonable suspicion, to justify a warrantless entry made under exigent circumstances. Motion for Reconsideration, p. 3. The government argues that Officer Tanner was confronted with a situation highly indicative of a domestic dispute, and that if he had simply "left the scene of such circumstances at that point [he] would have been subject to criticism for abandoning his ... duty to protect a victim of assault." *Id.*, p. 4.

The government cites several cases from various circuits in support of its position, and in the course of its argument introduces now the concept that Officer Tanner's warrantless entry may have been justified by his role as community caretaker. The Court will address in turn the facts in this case, the applicability of these decisions, and the notion that the community caretaking function might justify a warrantless entry in the circumstances of this case.

### 1.

In its memorandum opinion, this Court has recited the facts adduced at the prior evidentiary hearings. To summarize, Officer Tanner was dispatched to the Meixner house to investigate a 911 hang-up call. When he arrived, he found two occupants who appeared intoxicated, and circumstances suspicious of a domestic dispute. Before Tanner entered, the male occupant was removed from the house and the female occupant was present in the front room within Tanner's view. Tanner testified that he "had a suspicion there may have been [a domestic assault] but not enough probable cause to make an arrest." (Transcript of Officer Tanner's testimony, p. 49). He also testified that the reason he entered the house was to offer immediate assistance to the female, Monica Allor. (*Id.* pp. 38–39). There was no evidence from which an inference could reasonably be drawn that there were other people in the home who required aid, and Tanner's partner, Police Officer Gary Hubers, specifically testified that he had no reason to believe that someone else on the premises was injured.

### 2.

■ The government's argument, that Officer Tanner would be justly criticized if he simply left the premises at that point, presupposes only two options for the officer: leave the scene or enter and search the house. On the continuum of responses, the government has identified the polls, and ignores those intermediate responses which define measured behavior and are characteristic of the reasonableness to which the Fourth Amendment makes reference. For instance, if there was a domestic dispute, the officer could bring both parties out of the house, separate them, satisfy himself that no further "flare-up" was likely, and then leave the premises. If

violence ensued, or if the officer learned of an earlier assault, he could effectuate an arrest. There is no suggestion in this record, however, of a need to make a warrantless entry into the house in order for the officer to responsibly discharge his duties in this case.

To argue otherwise, the government cites *United States v. Brown,* 64 F.3d 1083 (7th Cir.1995). In that case, the Seventh Circuit advanced the concept that the amount of justification required to legalize a warrantless search is proportional to the intrusiveness of the search itself. *Id.* at 1086. The Court held that "quick inspections" of residences can be justified by less than probable cause, and cited *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), a case holding that the police may conduct a "protective sweep" of rooms in a house while making an arrest in order to ensure that there is no danger to them.[2]

In *Brown,* drug enforcement administration agents arrested a suspect, Johnson, who was driving a car which belonged to Fannie Bonds. The glove box contained a rental agreement in Bonds' name for another vehicle, and showed Bonds' address. Johnson agreed to take the agents to his source, and led them to Bonds' street and pointed out the defendant, Brown. The agents questioned Brown, who said he lived in the apartment which had been listed as Bonds' address, but claimed he was standing on the street because he was locked out of his apartment. The apartment doorbell bore Bonds' name but not Brown's. The agents arrested Brown and the search of his person produced keys, one of which fit the apartment door. The agents entered to look for Bonds, who was not there, and found drugs in plain view. The Court upheld the entry and search

---

2. In *Buie,* the officers had obtained an arrest warrant for the defendant, which was served at his home. The Supreme Court held that, incident to the arrest, the officers could look in closets and other spaces from which an attack could be immediately launched. The Court stated: "[W]e hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." 494 U.S. at 334, 110 S.Ct. 1093.

because the officers reasonably believed that Bonds could be in the apartment and in danger, given Brown's involvement in drug dealing, his fabrication of the story about locking himself out of the apartment, and his possession of the apartment keys. The Court noted that the lower court should have concluded that the search was reasonable after it had credited the agent's testimony that he entered out of concern for Bonds' safety. 64 F.3d at 1087. Bonds was not in view, and it was therefore necessary to search the apartment for her.

The majority's decision in *Brown* was criticized by the dissent on several grounds, including the use of a " 'sliding scale' approach ... as license for warrantless intrusions into private dwellings." *Id.* at 1089 (Rooner, J., dissenting). The Sixth Circuit's rule, set forth earlier in this opinion, does not utilize a sliding scale approach. In *United States v. Dunavan*, 485 F.2d 201 (6th Cir.1973), cited by the government in this case, the Court of Appeals recognized the emergency exception as an exigent circumstance and adopted language from *Root v. Gauper*, 438 F.2d 361 (8th Cir.1971). The Court held that police officers may enter a dwelling without a warrant in order to render emergency aid to a person whom they reasonably believe to be in need of assistance; however, "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 204, citing *Root*. In *Dunavan*, the defendant was found in a disabled car, foaming at the mouth and unable to talk. He had a motel key on his person and two briefcases in the car, all of which were turned over to the police. The officer sent Dunavan to the hospital and then went to the hotel and entered the room to search for information about Dunavan to give to hospital personnel, and in the process found incriminating evidence. The Court upheld the search because the officers could point to specific facts which demonstrated an emergency

and the need to respond to the aid of an unconscious person in obvious distress.

*Brown* is also distinguishable on the facts. There, the agents' suspicion that Bonds was in peril could not be dispelled without looking for her. In this case, no search was necessary to locate the object of Officer Tanner's concern. Monica Allor was within his view and speaking with him. There was no need to enter the house.

Nor does *United States v. Salava*, 978 F.2d 320 (7th Cir.1992), cited by the government, command a different result. In that case, the Court upheld a warrantless entry of the defendant's trailer-home to search for an assault victim, citing the emergency exception endorsed in *Mincey v. Arizona*, 437 U.S. 385, 392–93, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). In *Salava*, the police received a call from a person who stated that he had dropped off the defendant at a trailer park, that the defendant had been covered with blood, and that the defendant said that he had just killed someone and was in possession of a sawed off shotgun. The police arrived at the trailer and the defendant drove up shortly thereafter in another car. The defendant fled on foot and the police apprehended him. The police then did a quick inspection of the trailer for a dead or injured person, whom they did not find, but did see a shotgun in plain view. Once again, in that case more than a mere possibility of an exigency existed. The officers described specific and articulable facts that led them to believe that someone inside the dwelling required immediate assistance.

3.

The government also cites several cases in which warrantless police entries of residences were justified on the basis of burglary investigations, including *United States v. Tibolt*, 72 F.3d 965 (1st Cir.1995), *Murdock v. Stout*, 54 F.3d 1437 (9th Cir. 1995), and *United States v. Johnson*, 9 F.3d 506 (6th Cir.1993). In each of those cases, the police had direct evidence of a home invasion and were unable to locate

the home owner prior to the entry. The courts held that checking premises for burglaries are part of the police officers' routine community caretaking functions, and justified the entries on that basis. Neither the facts nor the legal principles espoused in those opinions have direct application in the present context.

However, the *Murdock* Court described, but did not use, a three-part test employed by other courts to analyze emergency cases and that test was subsequently adopted by the Ninth Circuit in *United States v. Cervantes*, 219 F.3d 882 (9th Cir. 2000), also cited by the government. In that case, a police officer was called to an apartment building to investigate a complaint by neighbors of a strong chemical odor. The officer recognized the odor as coming from a solvent or acetone-based chemical which, the officer knew, was sometimes used in the production of methamphetamine. The police officer determined that the odor originated from a specific apartment, and when he looked through the window he saw three men inside with very little furniture. Knowing that a risk of explosion existed, the officer pounded on the door without success, but eventually caused the defendant to open the apartment door, at which point the chemical odor was much stronger. The officer entered the apartment and the three men fled. After the defendant was apprehended, the officer notified the apartment manager and assisted him in evacuating the other residents and turning off open flames. Thereafter, he entered the apartment itself and found a drug laboratory. The Court of Appeals held that the search could be justified under the emergency doctrine in which police are permitted to respond to emergencies as part of their community caretaking function. Quoting from *People v. Mitchell*, 39 N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607 (1976), the Court set forth three conditions that must be satisfied: "(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property. (2) The search must not be primarily motivated by intent to arrest and seize evidence. (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched." 219 F.3d at 888.

The Court in *Cervantes* recognized that there was both an objective and a subjective component to this test. In other words, the officer's action must be objectively reasonable and supported by reasonable grounds approximating probable cause; and the officer's motives must be pure, that is, the emergency must not be a pretext for searching for another purpose. Resort to the emergency doctrine, however, suggests a concession that probable cause which is required to justify searches and seizures under a traditional analysis is absent.

The Sixth Circuit's iteration of an exception of this type can be found in *United States v. Rohrig*, 98 F.3d 1506 (6th Cir. 1996), also cited by the government. In that case, the Court upheld the warrantless entry by police into defendant's home for the purpose of abating a nuisance, in that case loud music blaring from a house in the middle of the night. The police officers who responded to the scene could hear the music a block away. Neighbors greeted the officers' arrival to complain about the noise. The officers tried to rouse the owner of the house by knocking at the door, banging on windows, and walking around the house. The back door was open, the officers entered and eventually located the owner passed out in an upstairs bedroom. They located a large marijuana growing operation in the house during their search for the owner.

The Court stated that its inquiry about the validity of the warrantless entry was driven by three questions: "(1) whether immediate government action was required, (2) whether the governmental interest was sufficiently compelling to justify a warrantless intrusion, and (3) whether the citizen's expectation of privacy was diminished in some way." *Id.* at 1521.

The Court held that there was a need for immediate action because the noise was continuous and offensive to neighbors; the peace and tranquility of the neighborhood was an important governmental interest served, that is, it was necessary to immediately abate the nuisance; and the defendant undermined the traditional privacy interest in his dwelling by projecting loud noises out into the neighborhood. In other words, the Court found that it could not protect the defendant's privacy interests in that case without diminishing the neighbors' right to the quiet enjoyment of their own homes. *Id.* at 1521–22.

It is the government's contention in this case that Officer Tanner likewise was discharging his community caretaking role when he entered the Meixner home to investigate a possible domestic dispute. This argument, however, must be rejected. First, there is no showing that immediate action which included a warrantless home entry was required. Monica Allor was within Officer Tanner's view. He could have asked her to come out of the house. There is no evidence in this record that there was someone else in the house in need of assistance, immediate or otherwise.

■ Second, the government has not demonstrated a compelling interest in this case which justifies a warrantless intrusion. It is beyond question that the state has a compelling interest to protect its citizens and investigate crimes, including domestic assault. However, that interest does not alone justify a departure from the requirements of the Constitution. To hold otherwise would allow this exception to engulf the Fourth Amendment itself. Rather, the compelling governmental interest must have its foundation in the needs of the moment—the exigency—and the harm which is reasonably presented by the objective information available to the responding officer. The officer must be able to point to specific and articulable facts justifying a reasonable belief that someone inside was in immediate need of assistance. In this case, the government did not make the requisite showing which established a need to enter Meixner's home.

Finally, the third prong of *Rohrig's* test calls for an assessment of the home dweller's expectation of privacy. On this record, Meixner sought to stand on his right to be free from a warrantless government home entry. Tanner responded to the defendant's assertion of his rights by a show of raw power and a declaration that his badge was the only authority he needed to enter the home. There was no need for Tanner to enter the home for any purpose called for by the circumstances, except perhaps to establish domination over the will of the home dweller. Unlike the defendant in *Rohrig*, Meixner did nothing to undermine his right to be left alone. The government's interest in effectuating an immediate home entry in this case is not more compelling than a defendant's interest in maintaining the privacy of his home.

With respect to the warrantless entry of Meixner's home by Officer Tanner, the government has not articulated a legal standard that has been misapplied to the facts of this case as found by the Court. The Motion for Reconsideration on that basis, therefore, is **DENIED**.

### B.

The government also contends that the good faith exception to the exclusionary rule announced by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), should have precluded the suppression of the evidence in this case. In previously rejecting this argument, the Court found that the Bureau of Alcohol Tobacco and Firearms (BATF) agents' good faith was not sufficient to dissipate the tainted search warrant application based on information obtained from Officer Tanner's illegal entry into Meixner's home. *Meixner*, 2000 WL 1597736 at *10.

The government criticizes this Court's reference to *United States v. Dice*, 200 F.3d 978 (6th Cir.2000), and *United States*

*v. Leake,* 95 F.3d 409 (6th Cir.1996), in this case for the proposition that the information garnered by government agents in support of a search warrant must have been obtained independent of any constitutional violation. To the extent that the citations focused on the independent source rule rather than the good faith exception to the exclusionary rule, the government's criticisms are well-taken. Nonetheless, the exclusionary rule still must apply in this case.

In *United States v. Leon,* the Supreme Court announced an exception to the exclusionary rule applicable in certain cases of searches and seizures made pursuant to a search warrant. The Court balanced the costs of the exclusionary rule measured in the loss of evidence against the remedial benefits it provides in deterring unlawful police conduct and preserving the values of privacy reflected in the Fourth Amendment. 468 U.S. at 907–909, 104 S.Ct. 3405. Thus, as in the case before the Supreme Court, where a search warrant is declared invalid because of a technical defect or an adverse reassessment of a magistrate's probable cause decision, the deterrent effect of the exclusionary rule is so remote that its cost cannot be justified. Accordingly, the Court stated "that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.* at 918. Where the mistake in evaluating probable cause is made by the magistrate, not the police officer, the Court found that excluding evidence will not deter future police misconduct. "This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. In most such cases, there is no police illegality and thus nothing to deter." *Id.* at 920, 104 S.Ct. 3405.

The *Leon* decision itself dealt only with search warrants that were technically deficient or which were issued on the basis of affidavits that did not quite measure up to a later examination for probable cause. It did not attempt to reconcile the newly-announced good faith exception with the "fruit of the poisonous tree" doctrine stated in *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The government, however, has cited several cases, all from other circuits, which apply the good faith exception in circumstances where information to support a search warrant was obtained in police-citizen encounters later determined to violate the Fourth Amendment. For instance, in *United States v. White,* 890 F.2d 1413 (8th Cir.1989), *United States v. Kiser,* 948 F.2d 418 (8th Cir.1991), and *United States v. Fletcher,* 91 F.3d 48 (8th Cir.1996), the defendants had been detained at airports so dogs could sniff their luggage. The dogs' alerts were a fact used in support of search warrants pursuant to which the luggage was ultimately searched and drugs were discovered. The Court eventually held that the original detentions were not justified by sufficient suspicion, but nonetheless declined to suppress the evidence on the basis of *Leon* because the facts on which the initial detentions were based were "close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable." *White,* 890 at 1419, *Kiser,* 948 at 422 ("circumstances ... push this case into the gray area created by *Leon*"), *Fletcher,* 91 F.3d at 50.

*United States v. Thomas,* 757 F.2d 1359 (2d Cir.1985), was another dog sniff case, this time outside the defendant's apartment. The Court found that the sniff constituted a search (*contra, United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)), but applied the good faith exception to validate the search.

Other courts have held that *Leon* simply "does not apply where a search warrant is issued on the basis of evidence obtained as the result of an illegal search." *United States v. Wanless,* 882 F.2d 1459, 1466–67 (9th Cir.1989), *United States v. Vasey,* 834 F.2d 782, 789 (9th Cir.1987).

In *United States v. Reilly,* 76 F.3d 1271 (2d Cir.1996), the Court refused to apply the good faith exception to evidence obtained in the search of a dwelling and out buildings. Information to support the search warrant application was obtained when police officers inspected an unoccupied cottage that was adjacent to the residence on the defendant's property. The Court found that the cottage was within the curtilage of the house and the evidence obtained from the warrantless search could not be used to establish probable cause for the search warrant. *Id.* at 1279. The Court also found that in seeking the search warrant, the officers did not give an adequate description of their activities to permit the magistrate to determine whether that information was obtained within the curtilage of the defendant's home and therefore illegally acquired. The Court also held that *"Leon* does not shield the evidence in this case [because] [t]he issuance of the warrant was itself premised on material obtained in a prior search that today's holding makes clear was illegal." *Id.* at 1280.

The Court of Appeals for the Sixth Circuit has viewed the decision in *Leon* as follows:

> In analyzing the good faith exception, the [*Leon* ] Court identified three paradigmatic situations in which a search pursuant to a warrant may be held to be illegal. First, if a warrant is based on a knowing or reckless falsehood contained in the supporting affidavit, the warrant is invalid under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In this situation, there is necessarily police misconduct which can and ought to be deterred and suppression remains an appropriate remedy. Second, a warrant issued by a magistrate who acts as a mere rubber stamp for the police, or as an adjunct law enforcement officer, and who thus fails to manifest that neutrality and detachment demanded of a judicial officer, will be declared invalid. In such a case, no reasonably well-trained officer should rely on the warrant and the good faith exception will not apply. Third, if the information contained in the affidavit simply does not add up to probable cause, even after according the proper deference to the magistrate's determination, the warrant will be held invalid. Where a warrant is held to be invalid due to a simple error in the determination of probable cause, the evidence should be suppressed only if the supporting affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Similarly, a warrant may have a technical deficiency so that, even though probable cause exists to conduct a search, the particular search authorized by the warrant is illegal because, for example, the place to be searched or the objects to be seized are not particularly described. Suppression is an appropriate response to such a defect only when the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid.

*United States v. Savoca,* 761 F.2d 292, 295–96 (6th Cir.1985) (internal quotes and citations omitted). *See also, United States v. VanShutters,* 163 F.3d 331, 337–39 (6th Cir.1998), *United States v. Weaver,* 99 F.3d 1372, 1380–81 (6th Cir.1996).

■ The Court of Appeals for the Sixth Circuit has not directly addressed the question of when and if the good faith exception applies when the search warrant affidavit is tainted by evidence which itself was obtained in violation of the Fourth Amendment. This Court believes, however, that the exclusionary rule should apply in such cases unless there are circumstances in which the prior Fourth Amendment violation is so remote so as to dissipate the taint.

The rationale underlying the exclusionary rule and its good faith exception requires that there must be a deterrent, remedial effect that derives from suppressing evidence. In this case, Officer Tanner's unlawful conduct supplied the information which went to the heart of the probable cause determination. The infor-

mation was not obtained, for example, during a police-citizen encounter in a public place, thereby pushing it into a gray area of validity. Rather, Tanner's discovery was made during a warrantless entry into a private home, an entry that was presumptively unreasonable. Further, since there is a heightened expectation of privacy in one's own dwelling and a physical intrusion into one's home "is the chief evil" addressed by the Fourth Amendment, *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the exclusionary rule emerges as an effective deterrent.

The government argues that the BATF agents who executed the search warrant were not the ones who made the original warrantless entry, and therefore the good faith of the BATF agents should save the search. The government cites *United States v. Teitloff*, 55 F.3d 391 (8th Cir. 1995), in support of that argument. In that case, the defendant had been indicted on fraud charges based upon evidence obtained via a search warrant. An arrest warrant was issued on the authority of the indictment, and the defendant was arrested. During the search incident to the arrest, agents found defendant carrying false identification which misrepresented his social security number, and the defendant was then indicted for using a social security number not assigned to him. The fraud case was ultimately dismissed after a determination that the underlying search warrant was invalid because it was based on information obtained by police after a prior, warrantless search. The defendant then argued that the false social security card should be suppressed and that case dismissed because the evidence was seized during an arrest in a prior case that was dismissed because of an unlawful search. The Court refused to suppress the social security card, holding that the arresting agents in the second case acted properly. The Court noted that the arresting officers were not involved in executing the prior, unlawful search warrant, and presumably had no knowledge of the prior Fourth Amendment violation in which the evi-

dence supporting that search warrant was obtained. Further, there was an intervening grand jury determination of probable cause, an indictment, and a valid arrest warrant was issued.

*Teitloff* does not illuminate the issue of whether the good faith exception to the exclusionary rule should apply in this case. It provides guidance, if at all, on the disposition of evidence seized pursuant to a search warrant which issued on information which itself was obtained in violation of the Fourth Amendment: the Court in that case suppressed the evidence. 55 F.3d at 392.

■ Likewise, in this case the search warrant affidavit was tainted with evidence obtained as the result of a prior, warrantless, presumptively unlawful entry into a personal dwelling. The search warrant was a direct result of the illegally obtained information. The Fourth Amendment violation is not so remote that its taint is dissipated, or that the deterrent effect of suppression is without practical meaning. The exclusionary rule requires suppression of the evidence to promote the ends of the Fourth Amendment. This is not a case in which the good faith exception to the exclusionary rule is appropriately applied.

Because the government has not demonstrated an error in this Court's prior memorandum opinion and order which requires a different disposition of the case on the issue of whether the good faith exception should apply, the motion for reconsideration must be **DENIED.**

## II.

For the reasons stated, the government's motion for reconsideration is **DENIED.**