**UNITED STATES of America,
Plaintiff,**

v.

**Joshua Brent GRAY, Defendant.**

**No. CIV.A. 3:03–00182–01.**

United States District Court,
S.D. West Virginia,
Huntington Division.

Feb. 19, 2004.

Gregory McVey, Assistant United States Attorney, Charleston, for the United States.

George H. Lancaster, Federal Public Defender, Charleston, for Defendant Joshua Brent Gray.

## MEMORANDUM OPINION

GOODWIN, District Judge.

On February 10, 2004, the court entered an order granting Defendant Gray's Motion to Suppress and ordering the exclusion of all evidence obtained through an unlawful search of Mr. Gray's home that occurred on July 3, 2003 [Docket 55]. The court found that the government failed to meet its burden of proving that Mr. Gray knowingly and voluntarily consented to the officers' entry into his home and that the officers' entry therefore constituted an unlawful search. In addition, the court found that the subsequently issued warrant to search Mr. Gray's home was invalid because the warrant was based solely on evidence obtained during the illegal predicate search and that the good faith exception to the exclusionary rule does not apply in this circumstance. The rationale for these rulings is explained below.

## I. BACKGROUND

On or about July 3, 2003, Officers Hunter, Copley, and Jividen of the Huntington Drug Task Force went to Mr. Gray's home, located at 4511 Rear Altizer Avenue in Huntington, West Virginia for the purpose of conducting a "knock and talk." Drug trafficking complaints filed by at least one of Mr. Gray's neighbors prompted the officers' visit. Once the officers arrived, they knocked on Mr. Gray's side kitchen door, and he opened the door. A few moments later the officers entered Mr. Gray's home.

After the officers entered Mr. Gray's home, they observed on the kitchen table a very small amount of a tan substance with the appearance of crack cocaine. The officers asked Mr. Gray if anyone else was in the home and he said his friends were there. Standing at the door joining the kitchen and the living room, Officer Hunter observed two individuals in the living room, one of whom was Mr. Gray's co-defendant Terrence Askew. Mr. Askew was near a table on which lay a set of scales, a substance appearing to be cocaine, and a substance appearing to be crack cocaine. The officers asked for Mr. Gray's permission to search the home. Mr. Gray refused, and Officer Copley then applied for and obtained a search warrant

for Mr. Gray's home from the Honorable Alfred E. Ferguson of the Circuit Court of Cabell County. Later that same day, the officers executed the search warrant.

## II. DISCUSSION

■ The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV. This language "unequivocally establishes the proposition that '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Payton v. New York,* 445 U.S. 573, 589–90, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (quoting *Silverman v. United States,* 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961)). When law enforcement officers violate the Fourth Amendment by conducting an unreasonable search and seizure, the exclusionary rule may bar the admission of the evidence obtained directly and indirectly from the violation. *See Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ In his motion to suppress, Mr. Gray asserted that the officers' entry into his home violated his Fourth Amendment right to be free from unreasonable search and seizure and asked this court to bar the admission of any evidence obtained by virtue of the officers' allegedly unlawful entry. According to the government, the officers' entry was lawful because Mr. Gray knowingly and voluntarily consented to the entry. The issue of consent is a question of fact, the resolution of which

requires courts to consider the "totality of the circumstances." *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Lattimore,* 87 F.3d 647, 650 (4th Cir.1996). Where, as here, the "validity of a search rests on consent, the [government] has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given." *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). To be voluntary, consent must not be "coerced, by explicit or implicit means, by implied threat or covert force." *Schneckloth,* 412 U.S. at 228, 93 S.Ct. 2041. "[N]o matter how subtly the coercion [is] applied, the resulting 'consent' would be no more than a pretext for [an] unjustified police intrusion against which the Fourth Amendment is directed." *Id.*

Although three officers were present at the search and two were present at the hearing on Mr. Gray's motion to suppress, the government chose to call only Officer Hunter to testify. On the issue of Mr. Gray's consent, Officer Hunter testified that the officers knocked on Mr. Gray's side kitchen door and asked if they could come in to talk.[1] Mr. Gray stepped back, as though he were inviting the officers to enter, and the officers then stepped inside the kitchen area of Mr. Gray's home.

According to the defendants' testimony, the officers knocked on the side kitchen door, Mr. Gray opened the door, and the officers asked to speak with him. Mr. Gray stepped out of his home and down one or two of the stairs, pulling the door behind him. The officers were silent for a moment, and then Officer Jividen placed his hand on Mr. Gray's chest and said

1. Law enforcement officers' standard "knock and talk" procedure passes constitutional muster. Recently, the Fourth Circuit held that "[a] voluntary response to an officer's knock at the front door of a dwelling does not generally implicate the Fourth Amendment, and thus an officer generally does not need probable cause or reasonable suspicion to justify knocking on the door and then making verbal inquiry." *United States v. Cephas,* 254 F.3d 488, 493 (4th Cir.2001).

something like, "Let's speak with you inside." Mr. Gray took a step back and the officers followed him into his home. Mr. Gray immediately asked if the officers had a warrant and Officer Jividen responded, "You're going to try and make this tough on us. If you do, I'll make it tough on you." The officers then saw what appeared to be crack cocaine on the table, cuffed Mr. Gray, and said the crack on the table was their search warrant.

When asked on cross examination if Officer Jividen touched Mr. Gray, Officer Hunter said that he could not recall. No rebuttal evidence was offered by the government. Having considered all the evidence, the court concludes that the defendants' testimony was consistent with the evidence presented by the government. Officer Hunter and the defendants agree that Mr. Gray took a step back and that he did not verbally or physically resist the officers' entry into his home. Further, Officer Hunter did not refute the defendants' testimony that Officer Jividen placed his hand on Mr. Gray's chest.

Mr. Gray's act of stepping back is too ambiguous to be interpreted as consent.[2] This act occurred after Mr. Gray was confronted by three law enforcement officers and in response to the subtle coercion resulting from Officer Jividen's decision to place his hand on Mr. Gray's chest. By stepping backward, Mr. Gray merely indicated nonresistance, a common reaction to confrontations with law enforcement officers. See United States v. Most, 876 F.2d 191, 199 n. 17 (D.C.Cir.1989). Considering the totality of the circumstances, the court found that the government failed to satisfy its burden of proving that Mr. Gray voluntarily consented to the officers' entry. Therefore, the officers' entry into Mr. Gray's home was an unconstitutional search, conducted in violation of Mr. Gray's Fourth Amendment rights.

■■ After entering Mr. Gray's home and finding crack and cocaine in "plain view," Officer Copley obtained a search warrant and returned to Mr. Gray's home. Evidence obtained after an unlawful entry may not be used to support the finding of probable cause required for the valid issuance of a warrant. See Murray v. United States, 487 U.S. 533, 539–40, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (discussing independent source doctrine and stating, "[n]or would the officer without sufficient probable cause to obtain a search warrant have any added incentive to conduct an unlawful entry, since whatever he finds cannot be used to establish probable cause before a magistrate.)" The sole basis for the issuance of the warrant was the prior unconstitutional search of Mr. Gray's home.[3] Accordingly, the court found that

---

2. The officers clearly had the opportunity to seek Mr. Gray's express consent and failed to do so. The officers suspected drug activity prior to entering Mr. Gray's home but lacked sufficient evidence to obtain a warrant. The officers went to Mr. Gray's home hoping that Mr. Gray would consent to a search or would at least invite them to enter. Although the officers knew that they lacked probable cause to enter Mr. Gray's home without his consent, they failed to bring a written consent form or even orally ask for his consent. While the constitution requires neither oral nor written consent, obtaining this sort of objective evidence of consent is good practice where, as

here, the police go to a home without a warrant in hopes of gaining entrance.

3. The Affidavit and Complaint for Search Warrant submitted by Officer Copley stated: "On 7–3–03, members of Huntington Drug Task Force went to defendants' residence at 4511 R Altizer Avenue to do a knock and talk about drug activity. Defendant let officers into residence. Crack cocaine observed in plain view on kitchen table. A male subject from Detroit–MI had approximately $8,000.00 U.S. currency on him. Subject also admitted to ingesting a quantity of crack. An electronic scale with white powder was also visible in plain view." (spelling corrections made).

the warrant to search Mr. Gray's home was invalid, and the search conducted pursuant to the warrant violated the Fourth Amendment.[4]

■ Where, as here, law enforcement officers violate an individual's Fourth Amendment right to be free from unreasonable search and seizure, use of the evidence obtained directly and indirectly from that violation may be barred by virtue of the exclusionary rule. *See Wong Sun,* 371 U.S. at 484, 83 S.Ct. 407. Exclusion of unlawfully obtained evidence, however, is not constitutionally required. *United States v. Leon,* 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (citing *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)). The exclusionary rule is a prophylactic measure created by the judiciary to protect individuals' Fourth Amendment rights, and over time, courts have developed certain exceptions to the exclusionary rule. *Id.*

■ In *United States v. Leon,* the Supreme Court made clear that the cost society pays when probative evidence is excluded can only be justified when the exclusion serves to deter law enforcement officers from conducting unlawful searches and seizures. 468 U.S. at 907,

104 S.Ct. 3405. Adhering to this deterrence rationale, the *Leon* Court announced the "good faith" exception to the exclusionary rule. *Id.* at 913, 104 S.Ct. 3405. The good faith exception permits the admission of evidence obtained during an unconstitutional search authorized by a subsequently invalidated warrant when the officer reasonably relied on the warrant.[5] *Id.* at 922, 104 S.Ct. 3405. In the present case, the officers conducted an unconstitutional search of Mr. Gray's home pursuant to a warrant held invalid by this court. Accordingly, there is a question as to whether the good faith exception to the exclusionary rule allows the court to admit the evidence obtained by the officers pursuant to the invalid warrant.

■ *Leon* does not hold that the exclusionary rule is inapplicable to searches conducted pursuant to a warrant; rather, it holds that the exclusionary rule does not apply to evidence obtained pursuant to a warrant when an objectively reasonable officer would have believed that the warrant authorized a constitutional search.[6] *See id.* at 922, 104 S.Ct. 3405. In *Leon,* a confidential source of unproven reliability informed an officer that two persons

---

4. In so holding, the court does not fault the judge who issued the warrant. The judge could not have known that the officers entered Mr. Gray's home unlawfully, and had their entrance been lawful, Officer Copley's statement would have been a sufficient basis for finding probable cause to search.

5. The *Leon* Court specified that reference to "officer" in its opinion should not be read narrowly. 468 U.S. at 923 n. 24, 104 S.Ct. 3405. The objective reasonableness standard requires the court to consider the objective reasonableness of all officers involved in obtaining the warrant and executing the search. *See id.* Reference to "officer" in this court's opinion should likewise be read broadly.

6. The *Leon* Court made clear that in some circumstances an officer has no reasonable grounds for believing a warrant to be valid.

Accordingly, the Court noted that the good faith exception would not apply if the magistrate was misled by information that the affiant knew or should have known to be false, if the magistrate abandoned his neutral and detached role, if the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or if the warrant was so facially deficient that the executing officers could not reasonably rely on its validity. 468 U.S. at 923, 104 S.Ct. 3405 (citations omitted). The above form a non-exhaustive list of circumstances in which the good faith exception does not apply because law enforcement officers bear some responsibility for the invalidation of the warrant.

known to him were selling large quantities of drugs, and relying on this tip as well as information collected during an investigation, the officer's department obtained and executed a warrant to search the defendant's home. *Id.* at 903, 104 S.Ct. 3405. This search warrant was held invalid because the affidavit submitted with the warrant application did not provide an adequate basis for the magistrate's finding of probable cause. *See id.* at 904–05, 104 S.Ct. 3405. The *Leon* Court reasoned that in situations such as this, exclusion serves no purpose. The magistrate's error is presumed to be an innocent mistake, incapable of being deterred. *See id.* at 921, 104 S.Ct. 3405. Further, an officer who acts in objectively reasonable reliance on a warrant does not, by doing so, make a negligent or willful error such as could be deterred by exclusion. *See id.* Thus, the *Leon* Court concluded that exclusion of probative evidence is inappropriate where an officer acts in "objectively reasonable reliance on a subsequently invalidated warrant" because in such a case, exclusion could not "logically contribute to the deterrence of Fourth Amendment violations." *Id.* at 921–22, 104 S.Ct. 3405.

In the present case, the warrant was not invalid because the judge made an error in his assessment of probable cause. Instead, the warrant was invalid because the officers conducted an unlawful search of Mr. Gray's home and submitted the tainted fruit of this unlawful search to the magistrate in the warrant application. Because the warrant affidavit in *Leon* was free from tainted evidence, *Leon* leaves unanswered the question of whether the good faith exception to the exclusionary rule applies where the probable cause for

the issuance of a warrant is based on an illegal predicate search.[7] *See United States v. Meixner*, 128 F.Supp.2d 1070, 1076 (E.D.Mich.2001). The court must now resolve this issue. In doing so, the court notes that the Fourth Circuit has yet to consider the effect of an illegal predicate search on the application of the good faith exception, and thus the opinion of this court is written on a relatively clean slate.

The rationale for the good faith exception set forth in *Leon* hinges on the deterrent purpose of the exclusionary rule. *Leon*, 468 U.S. at 920–21, 104 S.Ct. 3405. The exclusionary rule is intended to deter law enforcement officers from conducting unconstitutional searches and seizures. *Id.* at 916, 104 S.Ct. 3405. Exclusion is only capable of deterring officers from conducting unconstitutional searches when officers are responsible for the constitutional error. *Id.* at 920–21, 104 S.Ct. 3405. Thus, the *Leon* Court reasoned, exclusion is not appropriate when the neutral magistrate bears responsibility for the error. *Id.* at 921–22, 104 S.Ct. 3405. This reasoning suggests that the good faith exception is inapplicable to evidence obtained pursuant to a warrant invalidated on the basis of an illegal predicate search. *See United States v. Scales*, 903 F.2d 765, 768 (10th Cir.1990); *United States v. Vasey*, 834 F.2d 782, 789–90 (9th Cir.1987); *United States v. Villard*, 678 F.Supp. 483, 491–92 (D.N.J.1988); *State v. Carter*, 69 Ohio St.3d 57, 630 N.E.2d 355, 363–64 (1994); *People v. Machupa*, 7 Cal.4th 614, 29 Cal. Rptr.2d 775, 872 P.2d 114, 121–22 (1994). A warrant can only be invalidated on the basis of an illegal predicate search when a law enforcement officer has violated the

---

7. The term "illegal predicate search" refers to unlawful searches conducted prior to the issuance of a warrant and used as a basis for the issuance of a warrant. *See* Gretchen R. Diffendal, *Application of the Good–Faith Exception in Instances of a Predicate Illegal Search: "Reasonable" Means Around the Exclusionary Rule?*, 68 St. John's L.Rev. 217 (1994) (using term).

Fourth Amendment by conducting an unlawful search and compounded this violation by submitting the tainted evidence collected in the unlawful search to a magistrate in a warrant application. Unlike cases in which a warrant is invalidated due to a magistrate's error, invalidation resulting from an illegal predicate search involves a clear error on the part of law enforcement, the recurrence of which will be significantly deterred by exclusion.[8]

Some courts have suggested that the officer's truthfulness, or lack thereof, to the magistrate concerning the circumstances of the illegal predicate search affects the good faith analysis. *See United States v. Diehl,* 276 F.3d 32, 42–44 (1st Cir.2002) (applying good faith exception because the officer's affidavit truthfully conveyed the circumstances of the illegal predicate search); *United States v. Reilly,* 76 F.3d 1271, 1281 (2d Cir.1996) (refusing to apply good faith exception because the warrant application did not reveal the circumstances of the illegal predicate search); *United States v. Mettetal,* No. CRIM.A. 3:96CR50034, 2000 WL 33232324 *6–8 (W.D.Va. June 16, 2000) (noting that the officer who applied for the warrant was not present at the illegal predicate search and did not intentionally mislead the magistrate). I disagree.

The issue of whether the officer informed the magistrate of the circumstances surrounding a predicate search is irrelevant to the application of the good faith exception. An officer who fails to tell a magistrate about the circumstances surrounding a predicate search is not necessarily acting in bad faith or trying to hide something because the warrant application process has never required an officer to explain with specificity how the evidence in the affidavit was obtained. Conversely, an officer cannot render a predicate search lawful simply by telling the magistrate the truth about the search. Regardless of whether an officer concealed or confessed the circumstances of the predicate search, he should bear responsibility for any illegality occurring prior to the issuance of the warrant. A magistrate's chambers is not a confessional in which an officer can expiate constitutional sin by admitting his actions in a well-drafted warrant application. The evidence remains tainted even if the officer admits its origins.

The purpose of the exclusionary rule is to deter law enforcement officers from conducting unlawful searches, and that purpose is doubly served by the exclusion of evidence obtained pursuant to a warrant issued on the basis of an illegal predicate search. Courts that have found otherwise mistakenly focused on the warrant process. *See United States v. Diehl,* 276 F.3d at 42–44; *United States v. Reilly,* 76 F.3d at 1281. The actions of the magistrate are never relevant to the application of the good faith exception. Rather, the inquiry begins and ends with the question of whether a law enforcement officer bears responsibility for a violation of the Fourth Amendment.

---

8. The illegal predicate search in the instant case was a search of a home conducted in the absence of a warrant, consent or exigent circumstances. This type of search is a clear violation of the Fourth Amendment. *See Payton,* 445 U.S. at 589–90, 100 S.Ct. 1371. Therefore, the court need not and does not express an opinion as to whether the good faith exception applies when the constitutionality of the predicate search is a closer call.

*See United States v. White,* 890 F.2d 1413, 1419 (8th Cir.1989) (finding good faith exception applies despite illegal predicate search because reasonableness of illegal predicate search was a "close call"); *United States v. O'Neal,* 17 F.3d 239, 243 n. 6 (8th Cir.1994) (refusing to apply good faith exception because the illegal predicate search was clearly illegal).

The court **FINDS** that the good faith exception to the exclusionary rule is inapplicable to the evidence obtained by the officers pursuant to the warrant issued for the search of Mr. Gray's home because the warrant was based on an illegal predicate search that clearly violated Mr. Gray's Fourth Amendment right to be free from unreasonable search and seizure. The officers went to Mr. Gray's home knowing that they did not have probable cause to obtain a warrant and hoping to get Mr. Gray's consent to search. After the officers failed to obtain consent from Mr. Gray, they nevertheless entered Mr. Gray's home and conducted an unlawful search without a warrant or exigent circumstances. The sole basis for the issuance of the warrant was evidence obtained in the course of this unlawful search. The warrant application was submitted by an officer who was present during the unlawful search and who wrongly stated that the officers' entry into Mr. Gray's house was consensual.

Application of the good faith exception in this case would sanction a course of conduct in which officers who lack probable cause to search a home conduct an unlawful search to obtain probable cause, submit the tainted evidence to a magistrate who issues a warrant, and benefit from the unlawful search when the evidence obtained pursuant to the warrant is used to prosecute the search victim. To deter such conduct, the court granted Mr. Gray's motion to suppress all evidence obtained pursuant to the search of his home.

## III. CONCLUSION

When a law enforcement officer enters a home without consent, exigent circumstances, or a warrant, the entry is a clear violation of the resident's Fourth Amendment right to be free from unreasonable search and seizure. All the evidence against Mr. Gray obtained through the officers' unlawful entry into his home on July 3, 2003 and the subsequent warranted search of that home was therefore suppressed. The court **DIRECTS** the Clerk to send a copy of this Opinion to defense counsel, the United States Attorney, the United States Probation Office, and the United States Marshal, and **DIRECTS** that Clerk to post this published opinion at *http://www.wvsd.uscourts.gov.*