IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 1196-02





 

LAURIN STUART LANEY, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTEENTH COURT OF APPEALS


HARRIS COUNTY






 Hervey, J., delivered the opinion of the Court in which Keller, PJ., Womack,
Keasler, Holcomb, and Cochran, JJ., joined. Meyers, J., filed a concurring
opinion in which Price, J., joined. Johnson, J., filed a concurring opinion. 


O P I N I O N 



 We granted discretionary review to determine whether the "community caretaking function"
exception to the warrant requirement applies to the warrantless entry and search of a private residence. 
While this term has been used in various contexts, we take this opportunity to clarify its use and hold that,
as part of the police officer's community caretaking functions to protect and preserve life and prevent
substantial injury, an officer may enter and search a private residence without a warrant for the limited
purpose of serving those functions when it is objectively reasonable.

 Shortly after midnight, on May 25, 1999, Harris County Sheriff's deputies responded to a call
involving a disturbance between neighbors in appellant's mobile home park. As the deputies were speaking
with some of the neighbors about the incident, appellant came out of his trailer, approached the officers,
and explained that he had turned off the electricity to a neighbor's trailer in retaliation for the neighbor's
turning off of his electricity. The deputies placed appellant in the back of their patrol car for their safety
pending possible charges for criminal mischief. While the deputies continued their investigation, one of the
deputies, Brian Quiser, noticed two young boys come out of appellant's darkened trailer onto the front
porch. Deputy Quiser asked appellant if the children were his; he replied they were not. When Quiser
made eye contact with the children, both walked back into the trailer. Quiser then asked appellant if he
had ever been arrested, and appellant informed him he had been arrested for indecency with a child. 

 Quiser walked over to the trailer to speak with the boys. At the suppression hearing, Quiser
testified that since appellant was detained and possibly going to jail, it was his responsibility to get the
children out of the trailer and find out who their parents were. As Quiser approached the trailer, one of
the boys came out and stood there with the door open. When asked where the other child was, the boy
told Quiser the other child was his brother, Joey, and that he was in the back bedroom. Quiser told the
boy to stay on the porch and proceeded to enter the trailer. He called Joey's name, but there was no
response. With his flashlight on, Quiser moved toward one of the back bedrooms where he found Joey
sitting on the bed. While scanning the room with his flashlight, he noticed a piece of paper lying on a shelf
by itself. The paper had photographic reproductions of what appeared to be eleven- to twelve-year-old
boys engaging in deviant sexual contact. Quiser did not touch the paper, but instead led Joey out of the
trailer. Quiser immediately informed his supervisor, Deputy Garrett DeMilia, that he had found something
in the trailer. DeMilia testified that they both then proceeded back into the trailer and went directly to the
bedroom where the paper with the photographs was located. (1) As with Quiser, DeMilia testified that he
did not touch the paper. DeMilia then called his supervisors and detectives to come to the scene. Upon
arrival, the deputies obtained appellant's consent to search the trailer. During the subsequent search, the
deputies seized the paper along with a floppy disk that turned out to contain similar images.

 At the hearing on appellant's motion to suppress, the State argued that the community caretaking
function exception to the warrant requirement applied to Quiser's warrantless entry and search of
appellant's trailer. Following a hearing on the motion, the trial court made the following oral findings:

 That the police went out there to investigate the incident involving turning off the electricity. 
The defendant was lawfully detained for the purposes of investigating this situation between
the defendant and the neighbor regarding the disconnecting of the electricity. That the
police officers -- was approximately midnight and the police officers observed two young
boys come out of defendant's trailer, who appeared to be between the ages of ten and
twelve. And that upon seeing the officers, they ran back into the apartment. The
defendant told the officers that they were not his sons, told the officers he had been twice
previously convicted of the offense of indecency with a child, and it is the court's opinion
that the police officers were absolutely unequivocally, without question, entitled to enter the
defendant's trailer in order to conduct a search for the remaining child who they did not
have possession of. One of the boys was outside the trailer told the officers, my brother
is inside. I think it would be absolutely incredible, totally outrageous to have required
police officers to have obtained a search warrant under those circumstances to secure the
possession of a child between the ages of ten and twelve who was inside the trailer of a
person who had admitted to the police of having been twice previously convicted of
indecency with a child. There's no doubt, no question exigent circumstances existed,
allowing the officers to enter the trailer to secure the person, the child between the ages of
ten and twelve, while there, the court is of the opinion they did in fact tell you what they
determined to have seen, the pornographic material is in plain view.


 We first note that when reviewing this motion to suppress, we will give great deference to the trial
court's findings of historical facts. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We
review de novo mixed questions of law and fact that do not turn on an evaluation of credibility and
demeanor. Id. Furthermore, we will sustain the trial court's ruling admitting the evidence if the ruling is
reasonably supported by the record and correct on any theory of law applicable to the case. Willover v.
State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). This is so even if the trial judge gives the wrong
reason for the decision. State v. Ross, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000) (citing Romero
v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)).

 On appeal, the court recognized that this Court identified the community caretaking function
exception in Wright v. State, 7 S.W.3d 148, 153 (Tex. Crim. App. 1999), but noted that this Court had
yet to address its application to a warrantless entry and search of a private residence. Laney v. State, 76
S.W.3d 524, 528-29 (Tex. App.--Houston [14th Dist.] 2003). The court explained that because Wright
involved a vehicle search, and because this case involved the deputy's concern and responsibility for the
welfare of the children (as opposed to concern for the appellant), the factors set forth in Wright used to
determine the reasonableness of a stop to check on the welfare of a passenger were not helpful. Id. at 529. 
The court, therefore, relied on two federal cases, United States v. Rohrig, 98 F.3d 1506, 1523 (6th Cir.
1996) and United States v. Meixner, 128 F. Supp. 2d 1070, 1074-75 (E.D. Mich 2001), (2) and the
factors set forth therein for determining when a warrantless entry of a home is justified as a community
caretaking function. Id. After going through each factor, the court concluded that the deputy's actions
were reasonable and, therefore, justified under the community caretaking function exception. Id. at 530. 
We will focus on cases from this Court and the Supreme Court to determine the application of this doctrine
to searches of private residences. See Mosely v. State, 983 S.W.2d 249, 256 n.13 (Tex. Crim. App.
1999) ("Federal circuit cases may be persuasive, but are not binding authority.").

 The term "community caretaking function" was first used by the Supreme Court in Cady v.
Dombrowski, 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973). There the defendant had been
in an accident, and his vehicle was subsequently towed to a private storage lot. Id. at 436. Upon taking
him to the hospital, the officers, who had identified the defendant as a Chicago police officer, noticed he
did not have his service revolver on him. Id. at 437. One of the officers, therefore, went to search the
vehicle for the missing revolver. Id. In the course of the warrantless search, the officer discovered
evidence connected to a murder the defendant committed shortly before the accident. Id. The Court noted
that "searches of cars that are constantly movable may make the search of a car without a warrant a
reasonable one although the result might be the opposite in a search of a home, a store, or other fixed piece
of property." Id. at 440 (quoting Cooper v. California, 386 U.S. 58, 59, 87 S. Ct. 788, 17 L. Ed. 2d
730 (1967)). The Court also recognized that 

 Local police officers, unlike federal officers, frequently investigate vehicle accidents in
which there is no claim of criminal liability and engage in what, for want of a better term,
may be described as community caretaking functions, totally divorced from the
detection, investigation, or acquisition of evidence relating to the violation of a criminal
statute.

Id. at 441 (emphasis added). With these two principles in mind, the Court held the justification for the
search -- "concern for the safety of the general public who might be endangered if an intruder removed
the revolver from the trunk of the [unattended] vehicle" -- was constitutionally reasonable and, therefore,
no warrant was required. Id. at 447. 

 This "concern for public safety" rationale was used by the Supreme Court thereafter to create
additional exceptions to the warrant requirement. See South Dakota v. Opperman, 428 U.S. 364, 366,
96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976) (automobile inventory doctrine); Mincey v. Arizona, 437 U.S.
385, 392, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978) (emergency doctrine). In Mincey, the Court
addressed the constitutionality of a warrantless search of an apartment after a shoot-out between officers
and the occupants of the apartment. Id. at 390-95. The Court held, "[T]he Fourth Amendment does not
bar police officers from making warrantless entries and searches when they reasonably believe that a
person within is in need of immediate aid." Id. at 392; see Michigan v. Tyler, 436 U.S. 499, 509-510,
98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978). According to the Court, "The need to protect or preserve life
or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." 
Mincey, 437 U.S. at 392-93(quoting Wayne v. United States, 318 F.2d 205, 212 (D.C. Cir. 1963)
(opinion of Burger, J.)). But the Court was careful to limit this exception, noting that "a warrantless search
must be 'strictly circumscribed by the exigencies which justify its initiation.'" Id. at 393 (quoting Terry v.
Ohio, 392 U.S. 1, 25-26, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). The officers in Mincey conducted
a four-day warrantless search that included opening dresser drawers and ripping up carpets; such a search,
according to the Court, could "hardly be rationalized in terms of the legitimate concerns that justify an
emergency search." Id. Therefore, despite the "constitutional difference between houses and cars" for
purposes of the Fourth Amendment recognized by the Court in Cady, the Court, in Mincey, nonetheless
recognized that "[t]he need to protect or preserve life or avoid serious injury" justified a warrantless
intrusion and limited search of a private residence. Id. at 392; Cady, 413 U.S. at 439-40 (quoting
Chambers v. Maroney, 399 U.S. 42, 52, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970)). 

 While the term "community caretaking function" was first referenced by this Court over twenty-five
years ago, see Robertson v. State, 541 S.W.2d 608, 611 (Tex. Crim. App. 1976) (regarding automobile
inventory searches), it was not until four years ago, in Wright v. State, that this Court first discussed the
community caretaking function as an exception to the Fourth Amendment's warrant requirement. Wright,
7 S.W.3d at 151. Relying on Cady, this Court remanded the case to determine whether a deputy acted
reasonably in stopping the vehicle in which appellant rode, out of concern for the appellant's welfare; the
deputy had observed him leaning out of an open rear window at 4:00 a.m. Id. This Court held, "As part
of his duty to 'serve and protect,' a police officer may stop and assist an individual whom a reasonable
person -- given the totality of the circumstances -- would believe is in need of help," and then set forth
the list of factors mentioned, but not applied, by the court of appeals below. Id. at 151-52. (3) This Court
concluded 

 While we today recognize the existence of the community caretaking function in Texas, we
emphasize its narrow applicability. Only in the most unusual circum-stances will
warrantless searches of private, fixed property, or stops of persons located thereon, be
justified under the community caretaking function, given the greater expectation of privacy
inherent with respect to residences and other private real property.


Id. at 152. The footnote to this conclusion explained further, "We have already recognized a doctrine
similar to the community caretaking function applicable to warrantless searches of private residences: the
emergency doctrine." Id. at 152 n.7 (citing Brimage v. State, 918 S.W.2d 466, 500-02 (Tex. Crim.
App. 1996) (plurality op. on reh'g)).

 We again had the opportunity to address the community caretaking function in Corbin v. State,
85 S.W.3d 272 (Tex. Crim. App. 2002). In that case, the officer observed the appellant cross onto the
shoulder of the road for approximately twenty feet while traveling at fifty-two miles an hour, thirteen miles
an hour under the speed limit. Id. at 274. Concerned that the appellant was drunk or sleepy, and thus in
need of assistance, the officer turned on his overhead lights, and the appellant pulled over without difficulty. 
Id. After asking the appellant to step out of his vehicle, the officer patted the appellant down and eventually
discovered a package of cocaine taped to appellant's back. Id. This Court applied the factors set forth
in Wright and concluded that the officer's exercise of his community caretaking function was not
reasonable. Id. at 277-78.

 The court of appeals here correctly decided not to apply the factors this Court set forth in Wright
and used in Corbin as neither of these cases apply to this case. Not only did both cases involve vehicle
stops and searches, but also, as referred to earlier, "Only in the most unusual circumstances will warrantless
searches of private, fixed property . . . be justified under the community caretaking function, given the
greater expectation of privacy inherent with respect to residences . . . ." Wright, 7 S.W.3d at 152. This
rule is consistent with the Supreme Court's holding in Cady and the exception to the Fourth Amendment's
warrant requirement created by it. See Cady, 413 U.S. at 439-42.

 But this does not mean that the reasoning behind the holding in Cady does not apply here. The
Court in Cady recognized that officers "engage in what, for want of a better term, may be described as
community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence
relating to the violation of a criminal statute." Id. at 441; see also Wayne R. LaFave, 3 Search and
Seizure § 6.6 (1996) (quoting ABA Standards for Criminal Justice § 1-1.1 (2d ed. 1980)) ("A police
officer has 'complex and multiple tasks to perform in addition to identifying and apprehending persons
committing serious criminal offenses.'"). They do so acting out of "concern for the safety of the general
public . . . ." Cady, 413 U.S. at 447. These "community caretaking functions" include, among others, the
duty to "reduce the opportunities for the commission of some crimes through preventive patrol and other
measures," "aid individuals who are in danger of physical harm," "assist those who cannot care for
themselves," and "resolve conflict." LaFave, supra, § 6.6. And while not all of these community
caretaking functions will justify a warrantless entry and search of a private residence, the Supreme Court
has recognized that, "[t]he need to protect or preserve life or avoid serious injury is justification for what
would be otherwise illegal absent an exigency or emergency." Mincey, 437 U.S. at 392. Therefore, the
Court has held, "[T]he Fourth Amendment does not bar police officers from making warrantless entries
and searches when they reasonably believe that a person within is in need of immediate aid" -- the
emergency doctrine. Id.

 This case presents two distinct problems -- one dealing with terminology and the other dealing with
application -- both requiring considerable discussion. The problem with the terminology is that various
titles describe the different doctrines setting forth exceptions to the warrant requirements of the Fourth
Amendment, resulting in confusion over the proper application of the correct doctrine. This problem is
clearly reflected in this case, and more generally in this entire area of the law dealing with the "community
caretaking function."

 The notion that officers act pursuant to their "community caretaker functions" serves as a basis for
three separate doctrines created by the Supreme Court: 

 1) the emergency aid doctrine, established in Mincey; 


 2) the automobile impoundment and inventory doctrine, first conceived in Cady, and later
expanded upon in Opperman; and,


 3) the community caretaking doctrine, or public servant doctrine, established in Cady, and followed
by this Court in Wright and Corbin. 


See Corbin 85 S.W.3d at 279 (Cochran, J., concurring); Mary E. Naumann, Note, The Community
Caretaker Doctrine: Yet Another Fourth Amendment Exception, 26 Am. J. Crim. L. 325, 329 (1999). 
The common thread in each of these three exceptions to the warrant and probable cause requirements is
the officer's purpose. Corbin, 85 S.W.3d at 280 (Cochran, J., concurring).

 The emergency doctrine is not the same as the community caretaking doctrine established in Cady. 
The distinction between the emergency doctrine and the community caretaking doctrine, hereinafter referred
to as the Cady doctrine, is a narrow, but critical one. Under the emergency doctrine, the officer has an
immediate, reasonable belief that he or she must act to "protect or preserve life or avoid serious injury." 
Mincey, 437 U.S. at 392. On the other hand, under the Cady doctrine, the officer "might or might not
believe there is a difficulty requiring his general assistance." Naumann, supra, at 333; see Cady, 413 U.S.
at 437 (stating officers were under the impression that appellant, as a Chicago police officer, was required
to carry a service revolver at all times, therefore, acting pursuant to department procedure, they sought to
find the revolver in appellant's vehicle). Therefore, while both doctrines are based on an officer's
reasonable belief in the need to act pursuant to his or her "community caretaking functions," the emergency
doctrine is limited to the functions of protecting or preserving life or avoiding serious injury. Additionally,
the Cady doctrine deals primarily with warrantless searches and seizures of automobiles (and will be limited
to those circumstances except in unusual circumstances), while the emergency doctrine deals with
warrantless entries of, but is not limited to, private residences. See Wright, 7 S.W.3d at 152 n.7.

 Having clarified the distinction between the Cady doctrine and the emergency doctrine, we now
turn to clarifying the use of the term "exigency" as it relates to the emergency doctrine. The emergency
doctrine is considered synonymous with the exigent circumstances doctrine. See Brimage, 918 S.W.2d
at 500; Colburn v. State, 966 S.W.2d 511, 519 (Tex. Crim. App. 1998); 40 Dix & Dawson, Texas
Practice: Criminal Practice and Procedure § 12.11 (2d ed. 2001 & Supp. 2003). But like the
emergency doctrine and the Cady doctrine, there is also a narrow, but critical, distinction between the two. 
"The exigent circumstances doctrine applies when the police are acting in their 'crime-fighting' role." 
Naumann, supra, at 331; see Welsh v. Wisconsin, 466 U.S. 740, 748-50, 104 S. Ct. 2091, 80 L. Ed.
2d 732 (1984). For instance, in Welsh, where officers entered the appellant's residence and arrested him
after receiving information that he was driving under the influence, the Supreme Court held that no exigent
circumstances existed allowing for such an intrusion into the appellant's home. Welsh, 466 U.S. at 750. 
On the contrary, the emergency doctrine applies when the police are acting, not in their "crime-fighting"
role, but in their limited community caretaking role to "protect or preserve life or avoid serious injury." 
Mincey, 437 U.S. at 392.

 To sum up, the Supreme Court has established three doctrines as exceptions to the warrant
requirement when a police officer acts pursuant to his or her community caretaking functions -- the Cady
doctrine, the emergency doctrine (not to be confused with the exigent circumstances doctrine), and the
automobile impoundment/inventory doctrine. 

 We now turn to the problem of applying the proper doctrine. In this case, the State argued in the
trial court that the community caretaking exception applied. The trial court found, "There's no doubt,
no question exigent circumstances existed, allowing the officers to enter the trailer to secure the person." 
The court of appeals analyzed the case under what it labeled a community caretaking doctrine using the
factors set forth in Rohrig. (4) This being an emergency doctrine case, however, the proper standards are
those set forth by this Court regarding the emergency doctrine, and not those set forth by the United
States Court of Appeals for the Sixth Circuit in Rohrig. (5)

 "We have used an objective standard of reasonableness in determining whether a warrantless
search is justified under the Emergency Doctrine." Brimage, 918 S.W.2d at 501; Colburn, 966 S.W.2d
at 519. This objective standard looks at the police officer's conduct and "takes into account the facts and
circumstances known to the police at the time of the search." Brimage, 918 S.W.2d at 501 (citing Garcia
v. State, 827 S.W.2d 937 (Tex. Crim. App. 1992); Janicek v. State, 634 S.W.2d 687, 691 (Tex. Crim.
App. 1982)); Colburn, 966 S.W.2d at 519. Furthermore, we look to ensure that the warrantless search
is "strictly circumscribed by the exigencies which justify its initiation." Mincey, 417 U.S. at 393; Bass v.
State, 732 S.W.2d 632, 635 (Tex. Crim. App. 1987). If the emergency doctrine applies, the police may
seize any evidence that is in plain view during the course of their legitimate emergency activities. Mincey,
437 U.S. at 393 (citations omitted); Brimage, 918 S.W.2d at 501. "The fact that the protection of the
public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render
the search unreasonable." Cady, 413 U.S. at 447.

 Although we disapprove of the court of appeals' analysis using the Rohrig factors, we nonetheless
agree with the court's conclusion that Deputy Quiser's actions in entering the home to ensure the well-being
of the young child were reasonable under the circumstances. Quiser's actions were "totally divorced from
the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Cady,
413 U.S. at 441. The appellant had already been detained for suspicion of committing criminal mischief. 
Quiser did not enter appellant's trailer to continue his investigation of that offense. Instead, he saw two
young boys, not belonging to the appellant, emerge from appellant's darkened trailer sometime after
midnight, and then witnessed one of the boys run back into the trailer. Quiser testified that because the
appellant was going to jail, it was his responsibility to get the boy out of the trailer and find out who his
parents were. Arguably, the deputies would have been criminally liable for leaving the child behind. See
Tex. Penal Code § 22.041 (West 2003) (abandoning or endangering child). Under the circumstances,
Deputy Quiser's actions were reasonable.

 More important to the emergency doctrine's application, there was an immediate, objectively
reasonable belief on Deputy Quiser's part that he needed to act to protect the life of the child and prevent
him from incurring serious injury. Although there was no immediate threat to the child's safety or well-being, had the boy been left alone in the trailer while deputies took appellant away, there would have been
a substantial risk of harm to the child. Furthermore, Deputy Quiser's search was "strictly circumscribed"
by the exigencies which justified its initiation. Mincey, 437 U.S. at 393. After the boy ran back in the
trailer, Quiser called out for him but there was no response. Quiser then proceeded directly to where he
was told the boy was -- the back bedroom. When he found the boy there, he also saw the pornographic
photos in plain view. Rather than expand his search for pornographic material, he immediately took the
child out of the room. Based on these circumstances, we find that the emergency doctrine applies. 
Accordingly, the deputies were not required to secure a warrant to enter and search appellant's residence.

 We do not intend our holding today to be interpreted to necessarily allow police officers to make
warrantless entries and searches every time there is a need to protect or preserve life or prevent serious
injury. Instead, the courts should carefully apply the objective standard of reasonableness when
determining whether an officer's warrantless entry and search is justified under the emergency doctrine. 
Having done so in this case, we overrule appellant's ground for review.

 The judgment of the Court of Appeals is affirmed.

 Hervey, J.

Delivered: October 8, 2003

Publish
1. 

 Appellant does not challenge this subsequent entry made by both Quiser and DeMilia. 
2. 

 The court also relied upon two Fifth Circuit cases, United States v. York, 895 F.2d 1026,
1028-30 (5th Cir. 1990) and United States v. Prescott, 599 F.2d 103, 106 (5th Cir. 1979) that
applied a more general test of reasonableness in light of objective facts known to the officer at the
time. Laney, 76 S.W.3d at 529. 
3. 

 The factors set forth in Wright are as follows: (1) the nature and level of the distress exhibited by
the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or
had access to assistance independent of that offered by the officer; and (4) to what extent the
individual -- if not assisted -- presented a danger to himself or others. Id. at 152. 
4. 

 Those factors include: (1) whether immediate government action was required; (2) whether the
government interest was sufficiently compelling to justify a warrantless intrusion; and (3) whether
the citizen's expectation of privacy was diminished in some way. Rohrig, 98 F.3d at 1521.
5. 

 The court of appeals' reliance on Rohrig is misplaced. Rohrig is an unique exigent
circumstances case, not an emergency doctrine case. Rohrig involved officers making a
warrantless entry into the defendant's home after they received a complaint of loud noise emanating
from inside. Rohrig, 98 F.3d at 1509. The court refused to invoke the emergency doctrine
noting that the only exigency presented was a breach of the peace; there was no substantial or
immediate threat to a person's safety, unlike the circumstances of this case. See id. at 1519. 
Instead, the court embarked on a "hybridized" exigent circumstances analysis, setting forth the
factors listed above. The court considered the officers' community caretaking functions only
in a limited manner, related solely to the second factor of their "test" -- weighing whether there was
a sufficiently compelling government interest to justify a warrantless intrusion. See id. at 1521. The
community caretaking functions the officers were serving in Rohrig: locating and abating a nuisance
in order to "restore the neighbors' peaceful enjoyment of their homes and neighborhood." Id. This
is much different than the function of acting to protect and preserve life and prevent substantial
injury.