**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Kevin McCLAIN; George Brandt; Jason Davis, Defendants– Appellees.**

**No. 04–5887.**

United States Court of Appeals, Sixth Circuit.

March 31, 2006.

Robert Anderson, Asst. U.S. Attorney, U.S. Attorney's Office, Nashville, TN, Thomas M. Gannon, U.S. Department of Justice Appellate Section, Criminal Division, Washington, DC, for Plaintiff–Appellant.

Richard L. Gaines, Eldridge, Irvine & Gaines, Knoxville, TN, Peter J. Strianse, Tune, Entrekin & White, R. Price Nimmo, Nimmo, Hoehn & Nimmo, Nashville, TN, for Defendants–Appellees.

Before: BOGGS, Chief Judge; BATCHELDER and GIBBONS, Circuit Judges.

**ORDER**

This matter comes before the court upon the petitions for rehearing, with suggestion for rehearing *en banc*, filed by the appellees, and the response of the appellant thereto. The petitions have been circulated not only to the original panel members but also to all other judges * of the court in regular active service, less than a majority of whom have voted in favor of rehearing en banc. Accordingly, the petitions have been returned to the panel for decision.

Upon consideration of the petitions and the response the panel concludes that the issues raised therein were fully considered upon the original submission and decision of the case, and each of the requests for rehearing is therefore denied. In addition, Chief Judge Boggs has revised the penultimate paragraph of his opinion concurring with the decision of December 2, 2005, and copies of that decision and the revised concurrence are attached hereto.**

BOYCE F. MARTIN, Jr., Circuit Judge, with whom MOORE, COLE, and CLAY, Circuit Judges, join, dissenting from the denial of rehearing en banc.

Because the Fourth Amendment already has more holes in it than a piece of Swiss cheese and the panel's decision adds another errantly-fired cannon-ball sized hole, I dissent from the Court's decision denying rehearing en banc. The panel's decision makes several errors: (1) It misunderstands the purpose and rationale of the good-faith exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); (2) It ignores this Circuit's precedent, particularly in an opinion published ten days before the panel's decision in this case, *see United States v. Davis*, 430 F.3d 345 (6th Cir.2005); (3) It overstates the magnitude of the purported circuit split; (4) It relies upon the Eighth

---

* Judge Daughtrey recused herself from participation in this ruling.

** Editor's Note: The revised opinion appears at 444 F.3d 556.

Circuit's precedents in *United States v. White*, 890 F.2d 1413 (8th Cir.1989), *United States v. Kiser*, 948 F.2d 418 (8th Cir. 1991), and *United States v. Fletcher*, 91 F.3d 48 (8th Cir.1996), but ignores the fact that those decisions have been severely undermined and limited by other Eighth Circuit decisions, such as *United States v. O'Neal*, 17 F.3d 239 (8th Cir.1994); and (5) In adopting the Eighth Circuit's undermined precedent, it fails to correctly apply it, by using internally inconsistent logic, leading to the wrong result. For all of these reasons, the panel's decision is incorrect and it undermines both the purposes of the exclusionary rule and the good-faith exception, and I therefore dissent from the Court's decision not to rehear the case en banc.

## I.

### A. Leon & The Good–Faith Exception

In *Leon*, the Supreme Court addressed the "question whether the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *Leon*, 468 U.S. at 900, 104 S.Ct. 3405. The case arose when police, using a confidential informant, began investigating two individuals suspected of drug trafficking. *Id.* at 901, 104 S.Ct. 3405. During the investigation the police conducted surveillance of three residences and discovered that cars parked at the residences and cars visiting the residences belonged to individuals previously arrested for possession of marijuana. *Id.* A check of one of the individual's probation records led the police to Alberto Leon, who likewise had a previous arrest for drug charges, and at the time of the prior arrest, the police had information that Leon was heavily involved in drug importation into the United States. *Id.* Police then witnessed several persons arriving at the residences and leaving with small packages, as well as two individuals leaving Los Angeles on flights to Miami, a known drug source city. *Id.* at 902, 104 S.Ct. 3405. The pair, upon returning, were discovered with small amounts of marijuana. *Id.* On the basis of these facts, the officers prepared an affidavit requesting a search warrant, had it reviewed by several Deputy District Attorneys, and submitted it to a magistrate. *Id.* The magistrate then issued a facially valid search warrant, the searches were conducted, and the officers discovered large quantities of drugs and other evidence sufficient to charge the defendants with conspiracy to possess and distribute cocaine and various other counts. *Id.*

The defendants filed a motion to suppress which was granted in part by the district court. *Id.* at 903, 104 S.Ct. 3405. The court concluded that the affidavits were insufficient to establish probable cause and that the magistrate had erred by issuing the warrants. *Id.* A divided panel of the Ninth Circuit affirmed, agreeing that the affidavit lacked probable cause and that the magistrate erred by issuing the warrant. *Id.* at 904, 104 S.Ct. 3405. The Ninth Circuit also declined the government's request to recognize a good-faith exception to the exclusionary rule. *Id.* at 905, 104 S.Ct. 3405. The government filed a petition for certiorari, expressly declining to seek review over the probable cause determination and presenting only the question of "[w]hether the Fourth Amendment exclusionary rule should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective."

*Id.* It was in this posture that the Supreme Court reviewed the case.

To determine whether the good-faith exception ought to exist, the Court determined that it must "weigh[ ] the costs and benefits of preventing the use in the prosecution's case in chief of inherently trustworthy tangible evidence obtained in reliance on a search warrant issued by a detached and neutral magistrate that ultimately is found to be defective." *Id.* at 907, 104 S.Ct. 3405. In weighing the costs and benefits, the Court recognized the "substantial social costs" of the exclusionary rule because of its interference with the truth-seeking functions of judge and jury. *Id.* (citing *United States v. Payner,* 447 U.S. 727, 734, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980)). Further, when officers act in good faith, granting defendants an exclusionary privilege that results in a windfall undermines and "offends basic concepts of the criminal justice system." *Id.* (citing *Stone v. Powell,* 428 U.S. 465, 490, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)). Because of the high societal cost of exclusion, the Court determined that "[c]lose attention" must be paid to the "remedial objectives" and purposes behind the exclusionary rule. *Id.* at 908, 104 S.Ct. 3405.

The remedial objective of the exclusionary rule, pure and simple, is deterring police misconduct. *Id.* at 916, 104 S.Ct. 3405. The rule is not designed to punish the errors of judges and magistrates. *Id.* (noting that "there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion"). Thus, to have any purpose, the exclusion of unlawfully obtained evidence "must alter the behavior of individual law enforcement officers or the policies of their departments." *Id.* at 918, 104 S.Ct. 3405. With these factors balanced, the Court determined that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.*[1] Thus, when the remedial objective of the Fourth Amendment will be served, exclusion is the appropriate remedy. When no deterrence can be expected to result from suppression, then society ought not be forced to bear the cost of exclusion.

The Court found that when officers act in objective good-faith reliance on the determinations of a magistrate, suppression "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *Id.* at 919, 104 S.Ct. 3405. *Leon* acknowledges that suppression of evidence based on the errors of a magistrate serves no deterrent purpose upon police officers' conduct, and therefore, suppression is not justified in those circumstances. This approach recognizes that "[r]easonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause," and therefore, when police officers rely, in

---

1. It is highly relevant to point out the posture of *Leon*. Officers investigated and accumulated facts which they believed amounted to probable cause. They prepared an affidavit and presented it to a magistrate who agreed. The warrant was later found to be invalid after the officers relied in good faith upon the magistrate's conclusions and executed the search. *Leon* was not a case, like *McClain,* where the officers first violated the Fourth Amendment and then sought to play nice afterwards. *Leon* controls our decision when magistrates err and officers rely in objective good-faith. It does not purport to address the issue of *police error*. To the extent that it does, *Leon*'s clear command that suppression is the remedy if it will deter police misconduct, controls here to deter the *police error* that occurred.

objective good-faith, on a detached and neutral magistrate's determination of probable cause, but a court later finds the magistrate's conclusions to be in error, a punishment inflicted upon the police officers and society serves no purpose. *Id.* There are, of course, exceptions to this rule to guard against abuse.[2]

Furthermore, as the Court very clearly noted in *United States v. Peltier*, 422 U.S. 531, 539, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975):

> The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.

The purposes of the exclusionary rule are served where "it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Id.* at 542, 95 S.Ct. 2313. Thus, the good-faith exception is particularly appropriate "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.... In most such cases, there is no police

illegality and thus nothing to deter." *Leon*, 468 U.S. at 920–21, 104 S.Ct. 3405. Stated another way, "[p]enalizing the officer for the magistrate's error, *rather than his own*, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* at 921, 104 S.Ct. 3405 (emphasis added).

And, finally, applying these principles in *Leon* itself, the Court found that suppressing the evidence, based on the magistrate's erroneous determination that the facts in the affidavit established probable cause, would serve no deterrent purpose on the police. The police had done nothing wrong and nothing illegal. They had conducted lawful surveillance and submitted this information to a magistrate who determined that probable cause existed for a search warrant. *Id.* at 925–26, 104 S.Ct. 3405. They then properly executed the warrant and discovered incriminating evidence. *Id. Leon*, therefore, presents the quintessential good-faith exception case— proper police conduct, a magistrate's error, and objective good-faith police reliance on the magistrate's determination. In these circumstances, where the magistrate's determination is later found to be erroneous, suppressing the evidence will do nothing to deter police conduct, because the police did not do anything unlawful.

### B. The Panel Misconstrues Leon

Starting at the beginning, *Leon* is not even directly on point in this case. As demonstrated above, *Leon* addressed a situation of entirely lawful police investiga-

---

2. First, deference to a magistrate "does not preclude inquiry into the knowing or reckless falsity of the affidavit upon which that determination was based." *Leon*, 468 U.S. at 914, 104 S.Ct. 3405 (citing *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). Second, a magistrate must remain neutral and detached and cannot serve as a rubber-stamp for the police. *Id.* (citing *Agui-*

*lar v. Texas*, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)). Third, reviewing courts will not defer to a magistrate's finding of probable cause where the affidavit does not "provide the magistrate with a substantial basis for determining the existence of probable cause." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

tion culminating in good-faith reliance on a magistrate's erroneous determination that probable cause existed to issue the search warrants. That is, there was (1) a lawful investigation, (2) an application for a warrant, (3) a magistrate's determination that the affidavit contained probable case and the warrants were issued, (4) searches conducted and objective good-faith reliance on the magistrate's determination, and (5) a court's later determination that the magistrate erred in determining that the facts in the affidavit amounted to probable cause. In *Leon*, the police did not ever violate the law. They simply relied in good faith on a magistrate's error. In this case, however, there was (1) *first* an *illegal warrantless search* of the defendant's home, *then* (2) additional surveillance based on the information obtained as a result of the illegal search, and (3) a warrant application relying entirely on the evidence obtained as a result of the first illegal search and the fruits obtained therefrom. The panel's decision fails to account for this crucial and determinative difference between *Leon* and the case before us.

The second crucial error is the panel's failure to distinguish, as *Leon* instructs, between errors by judges and magistrates, and errors by police officers. The deterrence rationale, *Leon* holds, is not applicable to errors by judges and magistrates. When police misconduct occurs, however, the deterrence rationale is at its apex. "Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir.1996). In this case, the police conducted a warrantless and presumptively unconstitutional search of the defendant's home. *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). This is a clear Fourth Amendment violation by *police officers*. *Leon* instructs us to pay "[c]lose attention" to the "remedial objectives" of the exclusionary rule, and apply it only in those cases where the purpose of deterrence can be furthered. *Leon*, 468 U.S. at 908, 918, 104 S.Ct. 3405. This is precisely such a case.[3] It is *not*, as *Leon* was, a case where "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Id.* at 920–21, 104 S.Ct. 3405. The panel further errs in this respect by acknowledging the deterrence rationale— by paying lip service to it—but failing to discuss its relevance to this case. Instead, the panel decision provides the police with their magic lamp.

Without going any further than *Leon* itself, the panel should have suppressed the evidence obtained during the illegal search of the defendant's home. The panel notes, however, as have many courts, that an additional "wrinkle," exists—reconciling the fruit of the poisonous tree doctrine, *see Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939); *Segura v. United States*, 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), with the good-faith exception. This is because the evidence obtained from the unconstitutional warrantless search of the home was used to conduct additional sur-

**3.** Furthermore, this case fits squarely within *Peltier*'s statement that "[t]he deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused." 422 U.S. at 539, 95 S.Ct. 2313. In this case, the warrantless search of the defendant's home, the "chief evil" against which the Fourth Amendment protects, is at the very least negligent, and more likely than not, reckless. This is precisely the type of case which *requires* suppression of the tainted evidence.

veillance and ultimately in an affidavit seeking a warrant to search 123 Imperial Point and five other properties identified through the investigation and surveillance.[4] With this in mind, it is helpful to turn to our precedent and other courts' precedent reconciling these two doctrines.

## II.

### A. This Court's Precedent

The panel claims that this is an issue of first impression in this Court. That is not my take on it. In *United States v. Davis,* 430 F.3d 345 (6th Cir.2005), a case published on November 22, 2005, ten days prior to this case's publication, we addressed the issue of whether a prior warrantless search tainted the subsequent search, pursuant to a warrant, of the defendant's car or whether the subsequent search warrant cured the underlying constitutional violation. We held that the "search of [the defendant's] vehicle was tainted by the [prior] illegal search, and thus the search warrant was insufficient to overcome this constitutional defect." *Id.* at 357–58. The remedy was to "remove [the illegally seized evidence] from the affidavit when considering whether there is still sufficient information to establish probable cause." *Id.* (citing *United States v. Reilly,* 76 F.3d 1271, 1282–83 n. 2 (2d Cir.1996) (discussed *infra* )).[5] Finally, though the government did not argue the point, we noted our "agree[ment] with the numerous other circuits that have held that the *Leon* good-faith exception is inapplicable where a warrant was secured in part on the basis of an

illegal search or seizure." *Id.* at 358 n. 4 (citing *Reilly,* 76 F.3d at 1282; *United States v. Bishop,* 264 F.3d 919, 924 n. 2 (9th Cir.2001)).

Additionally, though not binding upon us, a district court in this Circuit has given thoughtful and persuasive consideration to this issue in nearly *identical* circumstances—that is, a prior warrantless search of a home where evidence is seized and later used to obtain a search warrant. After its consideration, the district court held that the evidence must be suppressed and the good-faith exception did not apply. *See United States v. Meixner,* 128 F.Supp.2d 1070 (E.D.Mich.2001). In *Meixner,* the police conducted a warrantless search of the defendant's home. The government did not rebut the presumption of unconstitutionality and proved no more than that there was a mere possibility of an emergency. *See United States v. Ukomadu,* 236 F.3d 333 (6th Cir.2001). Reviewing *Leon,* the court noted that "where a search warrant is declared invalid because of a technical defect or an adverse reassessment of a magistrate's probable cause decision, the deterrent effect is so remote that its cost cannot be justified." *Meixner,* 128 F.Supp.2d at 1076; *id* ("Where the mistake in evaluating probable cause is made by the magistrate, not the police officer, ... excluding evidence will not deter future police misconduct.").

The court also properly interpreted *Leon,* in contrast to the panel here, by noting that "[t]he *Leon* decision itself dealt only with search warrants that were tech-

---

4. This is to mean therefore that the evidence obtained from the search of the home should be stricken from the affidavit. Because the district court determined, and I agree, that all of the remaining evidence was fruit of the poisonous tree, the evidence must be suppressed. Thus, viewing the search warrant without the fruits reveals essentially a blank

piece of paper, which, even with a magic lamp, cannot constitute probable cause.

5. This, of course, assumes that the other evidence satisfies one of the exceptions to the fruit of the poisonous tree doctrine—independent source, attenuation, or inevitable discovery.

nically deficient or which were issued on the basis of affidavits that did not quite measure up to later examination for probable cause. It did not attempt to reconcile the newly-announced good faith exception with the 'fruit of the poisonous tree' doctrine stated in *Wong Sun*." *Id.* (citations omitted). The district court also properly focused on whether suppression would further the interests of the exclusionary rule—that is, whether suppressing the evidence would deter police misconduct. "In this case, [the officer]'s unlawful conduct supplied the information which went to the heart of the probable cause determination.... [The officer]'s discovery was made during a warrantless entry into a private home, an entry that was presumptively unreasonable. Further, since there is a heightened expectation of privacy in one's own dwelling and a physical intrusion into one's home 'is the chief evil' addressed by the Fourth Amendment, the exclusionary rule emerges as an effective deterrent." *Id.* at 1077–78 (internal citations omitted).

Because this Court's statements in *Davis* and the decision in *Meixner* are correct and one panel cannot overrule the decisions of another panel, the *McClain* panel erred not only by failing to acknowledge and address the cases, but in concluding otherwise. The panel's reasoning is suspect and does not withstand scrutiny.

## III.

A. *The Panel Overstates the Magnitude of the Purported Circuit–Split and Adopts the Most Extreme Position of any Circuit*

The panel claims that in addressing the fruit of the poisonous tree doctrine and the good-faith exception, the Ninth and Eleventh Circuits have excluded the evidence, but the Second and Eighth Circuits "have held that, at least under some circum-

stances, the *Leon* good faith exception can still apply when the warrant affidavit relies on evidence obtained in violation of the Fourth Amendment." *United States v. McClain,* 430 F.3d 299, 307–08 (6th Cir. 2005). It is true that the Ninth and Eleventh Circuits have held that the good faith exception does not apply in these circumstances. The Second Circuit's decisions, however, are much closer to the Ninth and Eleventh Circuits than the Eighth—the Second Circuit has *not* held that evidence *is* admissible in these circumstances. Rather, it has merely declined to hold that the evidence is *never* admissible in these circumstances. The only circuit upon which the panel may conceivably rely is the Eighth Circuit; but, the Eighth Circuit cases relied upon have been limited and undermined by its other decisions. And, even applying the Eighth Circuit's undermined precedent, the panel still should have reached the opposite conclusion. Moreover, the panel failed to consider or discuss additional authority from other courts that have considered the issue here.

### i. *The Second Circuit's Decisions*

I will start by discussing the Second Circuit's decisions, which, contrary to the panel's characterization, support my position and undermine theirs. The Second Circuit's most extensive analysis of the issue came in *United States v. Reilly,* 76 F.3d 1271 (2d Cir.1996) (noting that the "[g]ood faith [exception] is not a magic lamp for police officers to rub whenever they find themselves in trouble"). *Reilly* involved a warrantless search onto the defendant's property into protected curtilage. *Id.* The police officers observed and smelled what they believed to be a marijuana growing operation. They then sought a warrant from a magistrate while disclosing some circumstances of their prior warrantless search and not disclosing

other aspects. The magistrate issued the warrant, the search was conducted, and the officers discovered marijuana. The Second Circuit later held that the initial warrantless search was onto the curtilage of the defendant's property and therefore violated the Fourth Amendment. *Id.* at 1279. The issue before the court then, was the same issue that was before the panel is this case.

The Second Circuit ordered the evidence suppressed, relying in part upon the police officers' failure to disclose to the magistrate all the circumstances of their prior illegal search. But, the court found "an additional reason why *Leon* d[id] not shield the evidence" in that case. *Id.* at 1280. That reason was based on the precise circumstances here: "The issuance of the warrant was itself premised on material obtained in a prior search that today's holding makes clear was illegal." *Id.* The court noted—and the panel relies upon this statement—that it was "not hold[ing] that the fruit of illegal searches can *never* be the basis for a search warrant that the police subsequently use in good faith." *Id.* (emphasis added). It did not speculate on when those circumstances might arise, but noted that it need not reach the question because *Leon* commands courts to exclude evidence only on a case-by-case basis where "exclusion will further the purposes of the exclusionary rule." *Id.* at 1280–81 (quoting *Leon,* 468 U.S. at 918, 104 S.Ct. 3405); *id.* ("We take that caution seriously and today go no further than to hold that the purposes of the exclusionary rule are served by exclusion of the evidence in this particular case.").

The Second Circuit drew a clear distinction, as discussed above, that the panel here fails to appreciate. Because the exclusionary rule is designed to deter *police* misconduct and this goal is not furthered by suppression of evidence obtained under a warrant issued but later found to be defective, *Leon,* 468 U.S. at 918, 104 S.Ct. 3405, had the police simply innocently investigated based on a warrant later found to be invalid, the evidence would accordingly be admitted. *Reilly,* 76 F.3d at 1281. "But it is one thing to admit evidence *innocently* obtained by officers who rely on warrants later found invalid due to a magistrate's error. It is an entirely different matter when the officers are *themselves* ultimately responsible for the defects in the warrant." *Id.* This is precisely the distinction I have discussed above that controls this case and precisely what the panel fails to appreciate. The case here involved police misconduct that the exclusionary rule seeks to deter and accordingly, the exclusionary rule should be applied.

Moreover, the *Reilly* court distinguished one if its prior decisions in *United States v. Thomas,* 757 F.2d 1359 (2d Cir.1985), upon which the panel once again relies. *Thomas,* however, lends no support to the panel's disposition. That case involved an officer who sought a warrant based upon three factors: (1) a canine sniff outside of the defendant's apartment, (2) reliance on an informant's tip that the defendant was a narcotics dealer, and (3) that the defendant had acted suspiciously when arrested the previous day. *Id.* at 1366. The Second Circuit held that neither (2) nor (3) supported probable cause and that (1), the canine sniff, violated the Fourth Amendment. *Id.* at 1366–67. Nevertheless, the court found that *Leon* permitted the evidence to be admitted. *Id.* at 1368. This factual and legal situation is entirely different from that addressed in *Reilly* or by the panel here. Until *Thomas* was decided, no court in the Second Circuit had held that canine sniffs violated the Fourth Amendment. *Reilly,* 76 F.3d at 1281 (citing *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (holding that a canine sniff is "*sui gener-*

*is* " and "much less intrusive than a typical search")). Thus, unlike the officers in *Reilly* and unlike the officers in the case before the panel, the officer in *Thomas* "did not have any significant reason to believe that what he had done was unconstitutional." *Reilly*, 76 F.3d at 1281 (citing *Thomas*, 757 F.2d at 1368). When admitting the evidence, the Second Circuit explicitly stated that "[t]here [was] nothing more the officer could have or should have done under these circumstances to be sure his search would be legal." *Id.* (quoting *Thomas*, 757 F.2d at 1368).

Not so in this case. It cannot credibly be argued that the officers conducting a warrantless search of the defendant's home had "no significant reason" to believe that what they were doing might be unconstitutional. The officers in *Reilly* and the officers here had every reason in the world to know that their search was potentially, if not emphatically, illegal. There is noth-

ing more clear under the Fourth Amendment than that it "unequivocally establishes the proposition that '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' " *Payton*, 445 U.S. at 590, 100 S.Ct. 1371 (quoting *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961)); *Semayne's Case*, 5 Coke Rep. 91a, 91b, 77 Eng. Rep. 194, 195 (K.B.1604) ("the house of every one is to him as his castle and fortress, as well as his defence against injury and violence, as for his repose"); William Blackstone, 4 Commentaries on the Laws of England 223 (1765–1769) (noting that "the law of England has so particular and tender a regard to the immunity of a man's house, that it styles it his castle, and will never suffer it to be violated with impunity"). No officer could claim not to understand this principle.[6]

---

**6.** Likewise telling is the fact that, if the officers in this case had conducted their warrantless search of the home, pursuant to a state statute, not yet declared unconstitutional, Supreme Court precedent requires suppression of the evidence. *See Leon*, 468 U.S. at 912 n. 8, 104 S.Ct. 3405 ("We have held, however, that the exclusionary rule requires suppression of evidence obtained in searches carried out pursuant to statutes, not yet declared unconstitutional, purporting to authorize searches and seizures without probable cause or search warrants.") (citing *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); *Torres v. Puerto Rico*, 442 U.S. 465, 99 S.Ct. 2425, 61 L.Ed.2d 1 (1979); *Almeida–Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967)). Suppression is appropriate in these circumstances because "[t]hose decisions involved statutes which, by their own terms, authorized searches under circumstances which did not satisfy the traditional warrant and probable-cause requirements of the Fourth Amendment." *Michigan v. DeFillip-*

*po*, 443 U.S. 31, 39, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).

Thus, had the officers arrived at the defendants' home in this case and conducted a warrantless search pursuant to a state statute authorizing them to do so, and had used the evidence they discovered in order to obtain a later search warrant, the Supreme Court's precedent requires suppressing that evidence. The logic of those decisions requires the same outcome here. Furthermore, *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988), while not directly on point, lends credence to my conclusion that suppression is required here. There, officers made a warrantless, illegal entry into a warehouse. They observed what appeared to be contraband, left the premises, and obtained a search warrant. The Court noted that "[t]he ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his

With a review of the Second Circuit's decisions, it is evident that they do not support the result reached by the majority, even in their most generous terms. Rather, applying the Second Circuit's decisions to the facts here results unequivocally in suppression of the evidence. The good-faith exception does not apply here.

### ii. The Ninth Circuit's Decisions

Likewise, the Ninth Circuit has reached the correct conclusion—the opposite conclusion reached by the panel. *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir.1987), was that court's first review of the issue. In *Vasey*, like *Reilly*, and the case before the panel, the police officer conducted an initial warrantless search and later used evidence from that search in an affidavit in support of a search warrant. *Id.* at 788–89. The court properly interpreted *Leon* and found it inapplicable in these circumstances. *Id.* at 788. That is, "[t]he fact that Officer Jensen conducted a warrantless search of the vehicle which violated Vasey's Fourth Amendment rights precludes any reliance on the good faith exception." *Id.* Thus, unlike in *Leon*, where the officer presented *lawfully obtained* evidence to a neutral magistrate, and the magistrate erred in finding that the evidence established probable cause, the evidence in *Vasey* that was included in the affidavit was *un*lawfully obtained. "The constitutional error was made by the officer in this case, not by the magistrate as in *Leon*. The *Leon* Court made it very clear that the exclusionary rule should apply (i.e. the good faith exception should not apply) if the exclusion of evidence would alter the behavior of individual law enforcement officers or the policies of their department." *Id.* at 789. Thus, in a hold-

ing directly applicable to the case here, the Ninth Circuit held that the officer's "conducting an illegal warrantless search and including evidence found in this search in an affidavit in support of a warrant is an activity that the exclusionary rule was meant to deter." *Id.*

Finally, the court addressed and rejected an additional basis that the panel relied upon here—that the unlawful search was disclosed to the magistrate. This factor, the court persuasively reasoned, does not sanitize the taint.

> A magistrate's role when presented with evidence to support a search warrant is to weigh the evidence to determine whether it gives rise to probable cause. A magistrate evaluating a warrant application based in part on evidence seized in a warrantless search is simply not in a position to evaluate the legality of that search. Typically, warrant applications are requested and authorized under severe time constraints. Moreover, warrant applications are considered without the benefit of an adversarial hearing in which the evidentiary basis of the application might be challenged. Although we encourage magistrates to make all possible attempts to ensure that a warrantless search was legal before relying on the fruits of that search, we are mindful of the limitations on a magistrate's fact-finding ability in this context. We therefore conclude that a magistrate's consideration does not protect from exclusion evidence seized during a search under a warrant if that warrant was based on evidence seized in an unconstitutional search. Accordingly, the

decision to issue the warrant." *Id.* at 542, 108 S.Ct. 2529. The Court found the evidence admissible in *Murray,* because of the independent source rule—here, however,

there is no independent source that justifies admission of the evidence, and therefore this case requires suppression of the evidence.

good faith exception should not and will not be applied to the facts of this case. *Id.* at 789–90; *see also United States v. Gray,* 302 F.Supp.2d 646, 653 (S.D.W.Va. 2004) ("Regardless of whether an officer concealed or confessed the circumstances of the predicate search, he should bear responsibility for any illegality occurring prior to the issuance of the warrant. A magistrate's chambers is not a confessional in which an officer can expiate constitutional sin by admitting his actions in a well-drafted warrant application.").

The Ninth Circuit re-affirmed its conclusions in *United States v. Wanless,* 882 F.2d 1459, 1466 (9th Cir.1989). *See also United States v. Reed,* 15 F.3d 928, 933 (9th Cir.1994) (holding that observations made during a prior illegal search should not have been included in the affidavit for a search warrant). The court in *Wanless* noted that "[i]t is now fundamental that evidence which is obtained as a direct result of an illegal search and seizure may not be used to establish probable cause for a subsequent search." 882 F.2d at 1465 (citing *Vasey,* 834 F.2d 782; *United States v. Roberts,* 747 F.2d 537, 541 (9th Cir. 1984); *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). The court also rejected the government's suggestion that the good-faith exception should apply simply because the affidavit contained no misrepresentations. The court again held that "[t]he mere fact that the officer requesting the warrant is truthful about the evidence he submits in support of the warrant is insufficient.... [T]he search pursuant to the warrant would be valid only if the legally obtained evidence, standing alone, was sufficient to establish probable cause." *Wanless,* 882 F.2d at 1466–67. Thus, consistent with the Second Circuit, the Ninth Circuit has held that if suppression will alter the behavior of individual law enforcement officers or their departments, then the exclusionary rule must apply. This is the correct interpretation of *Leon* in conjunction with the fruit of the poisonous tree doctrine, and the panel erred by not reaching the same conclusion.

### iii. The Eleventh Circuit's Decision

The Eleventh Circuit has reached the same conclusion as the Second and Ninth Circuits. In *United States v. McGough,* 412 F.3d 1232, 1239–40 (11th Cir.2005), on similar facts to the case here, the Eleventh Circuit held that the good-faith exception does not apply. *McGough* too involved a warrantless entry into a defendant's home and the use of information obtained therein in an affidavit for a search warrant. The court held that "it was not an objectively reasonable law enforcement activity but rather the officers' unlawful entry into McGough's apartment that led to [the officer's] request for a search warrant. In such a situation, the search warrant affidavit was tainted with evidence obtained as a result of a prior, warrantless, presumptively unlawful entry into a personal dwelling." *Id.* (citing *Meixner,* 128 F.Supp.2d 1070; *Reilly,* 76 F.3d 1271; *Wanless,* 882 F.2d 1459). Because of these facts—that is, "[b]ecause the officers were not permitted to enter McGough's apartment under these circumstances, without a warrant and without his consent," the Court found the exclusionary rule applicable. *Id.* at 1240. The good-faith exception was not applicable in such circumstances. *Id.*

The panel here erred by not adopting the rationale of these cases. Each of the cases discussed above acknowledged the difference between errors by magistrates and misconduct by police officers. Finding misconduct by the police officers in those cases—conduct that the exclusionary rule is meant to deter—the courts properly suppressed the evidence. These cases properly apply the exclusionary rule and

the good-faith exception, in light of their respective goals, and accord a proper respect for the Fourth Amendment. The panel here, however, cited these cases, but neither adequately distinguished them or explored their reasoning. I explore additional decisions contrary to the panel's holding below.

### iv. Additional Authority Contrary to the Panel's Decision

The Tenth Circuit has addressed this issue as well. In *United States v. Scales,* 903 F.2d 765, 768 (10th Cir.1990), the court considered whether a prior illegal seizure could be used in a warrant to support a probable cause determination for the issuance of a search warrant. The court answered, as have the Second, Ninth, and Eleventh Circuits, as well as this Court in *Davis,* in the negative. Specifically and correctly, the court held that:

> The specific holding of *Leon* does not apply to the facts of this case, nor is the rationale behind it present here. When the DEA agents seized the suitcase and held it for more than twenty-four hours before obtaining a search warrant, they were not acting pursuant to a warrant subsequently deemed invalid. The "illegality" which arguably existed here was not a function of the agents' good faith reliance on a presumptively valid warrant. Moreover, the search of the suitcase after the search warrant was issued does not prevent us from evaluating the agents' behavior prior to that time.

> As the Ninth Circuit has observed, the "Supreme Court has applied the so-called 'good faith' exception to the exclusionary rule only to searches conducted in good faith reliance on a warrant or a

> statute later declared to be unconstitutional." We too decline to extend the holding of *Leon* to cases in which the good faith of the officer cannot be presumptively established by the existence of a search warrant valid on its face. Because the DEA agents were not acting in reliance on a search warrant when they seized the luggage and held it for more than twenty-four hours, *Leon* does not ratify their actions.

*Id.* at 768 (internal citations omitted).

The Seventh Circuit has likewise weighed in and held that "evidence discovered pursuant to a warrant will be inadmissible if the warrant was secured from a judicial officer through the use of illegally acquired information." *United States v. Oakley,* 944 F.2d 384, 386 (7th Cir.1991) (citing *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 391–92, 40 S.Ct. 182, 64 L.Ed. 319 (1920) (Holmes, J.); *Wanless,* 882 F.2d at 1465).[7]

Several state courts have addressed the issue and determined that the good faith exception does not apply in these circumstances. I have found no state court decision agreeing with the panel here. The Supreme Court of Ohio has reached the same conclusion as the aforementioned federal courts of appeal. In *State v. Carter,* 69 Ohio St.3d 57, 630 N.E.2d 355 (1994), the court addressed whether the good-faith exception could apply where the officers conducted an illegal search of the defendant's car and used the evidence seized in an affidavit to obtain a search warrant for the defendant's home. The court properly undertook an examination of the purposes of *Leon* and properly concluded that the rule is designed to deter *police* misconduct, rather than the errors

---

**7.** The Seventh Circuit also correctly noted that the warrant is not necessarily entirely invalid. The courts must then review the warrant without the untainted evidence—that is, excluding poisoned fruit—to determine whether sufficient evidence exists to establish probable cause. *Oakley,* 944 F.2d at 386.

of judges and magistrates. *Id.* at 362. In these circumstances and to effectuate the purpose of *Leon,* the court concluded that the "good faith exception does not apply where a search warrant is issued on the basis of evidence obtained as a result of an illegal search." *Id.* at 364 (citing *Vasey,* 834 F.2d 782; *Wanless,* 882 F.2d 1459; *Scales,* 903 F.2d 765). The Supreme Court of Ohio clearly understood the purpose of *Leon* and appreciated the distinctions that the panel here failed to. The court stated that "[i]t is important to note that the Supreme Court in *Leon* was willing to provide a good-faith exception to the exclusionary rule where the police officer heeds the command of the Fourth Amendment and seeks the approval of a detached magistrate before conducting a search. In *Leon,* the police officers had not violated the Fourth Amendment in attempting to acquire the needed probable cause necessary for the proper issuance of the search warrant." *Id.* at 364. In *Carter,* and all of the cases discussed *supra,* however, the officers *first* violated the Fourth Amendment and then used that illegally seized evidence to obtain a search warrant. In these circumstances, directly applicable to the panel's decision here, suppression is the required remedy.[8] The Supreme Court of Ohio also recently re-affirmed *Carter*'s holding in *State v. Buzzard,* 163 Ohio App.3d 591, 839 N.E.2d 469 (2005), holding that "where a search warrant is issued on the basis of evidence obtained as a result of an illegal search, the good-faith exception does not apply." *Id.* at 473–74 (citing *Carter,* 69 Ohio St.3d 57, 630

N.E.2d 355; *Vasey,* 834 F.2d 782; *Wanless,* 882 F.2d 1459; *Scales,* 903 F.2d 765).

The Arizona Supreme Court has also held that *Leon* is inapplicable in these circumstances. In *State v. DeWitt,* 184 Ariz. 464, 910 P.2d 9, 14–15 (1996), the Court held that:

> Having already determined that the [officers]' warrantless entry and search were constitutionally impermissible, it follows that the search warrant, which relied on these very agents' observations to show probable cause, was invalid. The state cannot set up the good faith exception when, as here, the warrant upon which the police claim they relied in good faith was obtained as a direct result of their own unjustified warrantless entry.

*See also State v. Hicks,* 146 Ariz. 533, 707 P.2d 331 (Ct.App.1985), *aff'd on other grounds sub nom. Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). There, the Arizona court held that *Leon* "does not hold that a subsequent warrant validates an earlier illegal search. Police officers cannot launder their prior unconstitutional behavior by presenting the fruits of it to a magistrate." *Id.* at 333.

The Maryland Court of Special Appeals has held that "in the case of an antecedent Fourth Amendment violation which contributes to a warrant application, the 'fruit of the poisoned tree' doctrine 'trumps' the officer's 'good faith' reliance under *Leon.*" *Fitzgerald v. State,* 153 Md.App. 601, 837 A.2d 989, 1020 (2003). In *People v. Machupa,* 7 Cal.4th 614, 29 Cal.Rptr.2d 775, 872 P.2d 114 (1994), the California Su-

---

**8.** Interestingly, the Supreme Court of Ohio also noted that *"Segura* and *Leon* were decided by the United States Supreme Court on the same day. Although *Leon* does not directly confront the issue of whether evidence should be suppressed when the only information in the affidavit for the search warrant that could

have provided probable cause was illegally obtained, the decision in *Segura* implies that such an unpurged illegality irreparably taints the search warrant when evidence is illegally obtained, and thus the specific deterrence rationale upheld by *Leon* dictates that suppression be granted." *Carter,* 630 N.E.2d at 363.

preme Court held that based upon *Leon*'s rationale, the good faith exception did not apply to a warrant issued after the police made an entry, without a warrant or consent, onto the defendant's premises and observed drugs in plain view. The Supreme Court of Idaho has also held that the good faith exception is inapplicable in these circumstances by focusing on the deterrence rationale and concluding that *Segura* trumps *Leon* in such circumstances. *State v. Johnson,* 110 Idaho 516, 716 P.2d 1288, 1298–1300 (1986). The Louisiana Court of Appeal has concluded the same. *State v. Scull,* 639 So.2d 1239, 1245 (La.Ct.App.1994) (crediting deterrent purpose of exclusionary rule and holding that *Leon* does not save a warrant when the predicate search violates the Fourth Amendment).

Numerous federal district courts have also found that *Leon* is not applicable in these circumstances. *See United States v. McQuagge,* 787 F.Supp. 637, 657 (E.D.Tex. 1992) (holding that *Leon* "does not apply when, as in this case, the evidence necessary to support the magistrate's finding of probable cause is illegally obtained"), *aff'd sub nom. United States .v. Mallory,* 8 F.3d 23 (5th Cir.1993) (table); *United States v. Villard,* 678 F.Supp. 483, 490 (D.N.J.1988) (holding that "*Leon* did not address the admissibility of evidence seized under a warrant that was based on information obtained in a prior illegal search. Further, it would be inappropriate and inconsistent with the reasoning of *Leon* to extend the good faith exception to such a situation."). In *United States v. Gray,* 302 F.Supp.2d 646 (S.D.W.Va.2004), the district court engaged in a lengthy and cogent analysis and also reached the same conclusion as the courts discussed above. *Gray,* like the case here, involved a prior warrantless and unconstitutional search of the defendant's home. The district court suppressed the evidence. Reviewing the deterrent purpose of *Leon,* the court distinguished the facts before it and noted that in the case before it, "the warrant was not invalid because the judge made an error in his assessment of probable cause. Instead, the warrant was invalid because the officers conducted an unlawful search of [the defendant's] home and submitted the tainted fruit of this unlawful search to the magistrate in the warrant application." *Id.* at 652. The court reasoned that *Leon* poses different factual circumstances—i.e., lawful, as opposed to unlawful, police conduct—and therefore courts should look to the purposes of the exclusionary rule and good-faith exception to determine the result of the particular case before it. *Id.* Looking to *Leon,* and its purpose of deterring unlawful police conduct, the court concluded, in line with the courts discussed above, "that the good faith exception is inapplicable to evidence obtained pursuant to a warrant invalidated on the basis of an illegal predicate search." *Id.* (citations omitted).

Discussing further, the court stated that "[u]nlike cases in which a warrant is invalidated due to a magistrate's error, invalidation resulting from an illegal predicate search involves *clear error* on the part of law enforcement, the recurrence of which will be significantly deterred by exclusion." *Id.* at 653 (emphasis added). The court also recognized that the illegal predicate search in the case before it was a warrantless search of the defendant's home—"a clear violation of the Fourth Amendment." *Id.*

The court went one step further and discussed whether an officer's truthfulness in an affidavit can cure the underlying constitutional violation. The Second Circuit in *Reilly* suppressed the evidence for two reasons: (1) the officer's untruthfulness in the affidavit, and (2) the prior illegal search. *Reilly,* 76 F.3d at 1279–80. The Ninth Circuit has held that truthful-

ness in the affidavit does save the search. The district court here stated that:

> The issue of whether the officer informed the magistrate of the circumstances surrounding a predicate search is irrelevant to the application of the good faith exception. An officer who fails to tell a magistrate about the circumstances surrounding a predicate search is not necessarily acting in bad faith or trying to hide something because the warrant application process has never required an officer to explain with specificity how the evidence in the affidavit was obtained. Conversely, an officer cannot render a predicate search lawful simply by telling the magistrate the truth about the search. Regardless of whether an officer concealed or confessed the circumstances of the predicate search, he should bear responsibility for any illegality occurring prior to the issuance of the warrant. A magistrate's chambers is not a confessional in which an officer can expiate constitutional sin by admitting his actions in a well-drafted warrant application. The evidence remains tainted even if the officer admits its origins.

*Gray,* 302 F.Supp.2d at 653. This reasoning is persuasive. Contrary to the panel's reasoning, I would reject the suggestion that the truthfulness of officers' affidavits can cure the underlying taint. I have discussed above the numerous persuasive authorities fundamentally contradicting and undermining the panel's conclusion here. Little more needs to be said on the great weight of authority. The panel's decision is simply not persuasive, nor does it even attempt to be, in light of the numerous conflicting decisions.

### IV.

#### A.  The Eighth Circuit's Decisions

That leaves only the Eighth Circuit. Although I believe that the Eighth Circuit's decisions, upon which the panel relies, have been undermined—and also that the decisions are likewise not supported by *Leon*—I shall discuss the cases and then explain why they do not support the panel's ultimate conclusion. These decisions include *United States v. White,* 890 F.2d 1413 (8th Cir.1989), *United States v. Kiser,* 948 F.2d 418 (8th Cir.1991), and *United States v. Fletcher,* 91 F.3d 48 (8th Cir. 1996). The decision that undermines these cases is *United States v. O'Neal,* which I discuss *infra.*

*White, Kiser, Fletcher,* (and *O'Neal*) involved *Terry*-like stops at airports or bus terminals. In each of the cases, the police believed that they had reasonable suspicion that criminal activity was afoot and conducted *Terry* stops. In each case, it was subsequently determined by a reviewing court that the facts relied upon by the officers were insufficient to establish reasonable suspicion. Nevertheless, the Eighth Circuit held that the evidence obtained as a result of the *Terry* stop, which was used to obtain a warrant to search the defendants' luggage, was admissible pursuant to the good-faith exception.

In *Fletcher,* for example, the officers had some facts that they believed amount to reasonable suspicion to detain the defendant's luggage in order to execute a canine sniff of the luggage. *Fletcher,* 91 F.3d at 49. The dog then alerted and the officers used this information to obtain a warrant to search inside the bag. *Id.* The district court and Eighth Circuit held that the particular facts did not amount to reasonable suspicion—that is, there was not reasonable suspicion to conduct the canine sniff. Nevertheless, the court determined that the facts were "close enough" to reasonable suspicion that the evidence should not be suppressed. *Id.* at 52.

According to the *Fletcher* court, the "relevant inquiry is whether the facts surrounding reasonable suspicion are 'close enough to the line of validity' that the police officers were entitled to a belief in the validity of the warrant and the existence of reasonable suspicion.... If the case presents such a 'close' question, the *Leon* good faith exception to the exclusionary rule should be considered." *Id.* at 51 (citing *White*, 890 F.2d 1413). Without reviewing the purpose of the exclusionary rule or recognizing the distinction between police errors and a magistrate's error, per *Leon*'s instructions, the court stated that "[t]his case is indeed within the gray area of *Leon*." *Id.* (also noting that both *White* and *Kiser* were "so close to the line of validity as to warrant application of *Leon*"); *see also id.* at 52 ("While neither case supported a finding of reasonable suspicion, both were close to the line of validity."). These cases, addressing only erroneous *Terry* stops, fail to accord the purpose of the exclusionary rule its due respect.

### B. United States v. O'Neal

Another Eighth Circuit case has undermined and limited the holdings in *White* and its progeny. In *United States v. O'Neal*, 17 F.3d 239 (8th Cir.1994), the court again addressed a *Terry* stop that led to a warrant to search the defendant's bag. A reviewing court later determined that the detention of the bag was based on less than reasonable suspicion. Here, the court considered the purposes of *Leon*, and noted that "[n]either *White* nor *Leon*, however, are unqualified in their application." *Id.* at 242 n. 6. Bringing its decisions closer in line with the courts reviewed above—though not entirely—the Eighth Circuit held that "[i]f the method by which evidence supporting a search warrant is seized is *clearly illegal*, then even under *Leon* ... evidence obtained under the resulting warrant should be excluded." *Id.* (emphasis added). The court also noted that "[i]f clearly illegal police behavior can be sanitized by the issuance of a search warrant, then there will be no deterrence, and the protective aims of the exclusionary rule will be severely impaired, if not eliminated." *Id.*

### C. United States v. Conner

At least one district court in the Eighth Circuit has applied the totality of the Eighth Circuit's jurisprudence in this area to a factual situation quite similar to *McClain*. In *United States v. Conner*, 948 F.Supp. 821 (N.D.Iowa 1996), the court addressed a situation where the police officers unlawfully accessed and entered the defendant's motel room (which, like a warrantless search of a home, is presumptively unconstitutional), and later used the evidence seized during the warrantless search in a search warrant application. *Id.* at 853.

The court noted that *White, Kiser*, and *Fletcher* all involved "*Terry*-like investigative stops at airports and bus terminals conducted without reasonable suspicion." *Id.* at 851. Thus, the court concluded that the "factual situation confronting the court is quite dissimilar from the circumstances presented in the *Fletcher–White* line of cases." *Id.* at 852. It was "significant" to the district court that the "*Fletcher–White* line of authority has never been extended beyond the factual scenario presented in each of those cases: *Terry*-type investigative stops conducted without reasonable suspicion." *Id.* at 853. In *Conner*, however, the court was confronted with a presumptively unconstitutional search of the defendant's hotel room "and the resulting inclusion in the search warrant application of information tainted by the unconstitutional entry." *Id.*

Nevertheless, the court found that even if the *Fletcher–White* line of cases could apply in all Fourth Amendment contexts (as opposed to being limited to the reasonable suspicion line of cases), the facts of *Conner* were not anywhere close to the line of validity as to warrant the application of the good-faith exception. *Id.* The Supreme Court's decision in *Payton* and hundreds of years of history prevent an officer from believing that a warrantless search of a dwelling is almost constitutional. *Id.* Thus, in applying *O'Neal,* the court found that the warrantless search of the motel room was "clearly illegal police behavior" and the good-faith exception did not apply. *Id.*

### D. Problems with the Eighth Circuit's and the Panel's Approach

The great weight of authority, with which I agree, reaches the opposite conclusion from the Eighth Circuit. In my opinion, the Eighth Circuit's approach, which the panel apparently adopted—but erroneously applied—fails to properly apply the exclusionary rule and the good-faith exception. Whether to admit or exclude—the very core of *Leon*'s holding—comes down to whether suppressing the evidence will "alter the behavior of individual law enforcement officers or the policies of their departments." *Leon,* 468 U.S. at 918, 104 S.Ct. 3405. When a reviewing court later determines that a magistrate erred, suppressing the evidence will serve no purpose because there is no unlawful police conduct to deter. *Id.* at 921, 104 S.Ct. 3405 ("Penalizing the officer for the magis-

trate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations."). But, when the misconduct is the police officer's own, the purpose of the exclusionary rule is served by suppression, and *Leon* does not apply. *Id.* at 918, 104 S.Ct. 3405.

The Eighth Circuit's cases very clearly involved *police misconduct* and suppression of the evidence would deter officers from committing the same Fourth Amendment violations again.[9] The *Fletcher–White* line of cases do nothing to deter officers from conducting weakly supported *Terry* stops. In fact, the decisions have the opposite effect of encouraging officers to take chances to the detriment of Fourth Amendment privacy interests. The Eighth Circuit's decisions in this area also effectively lower the reasonable suspicion standard and have the effect of admitting evidence seized upon little more than an officer's good faith hunch. On the other hand, had the Eighth Circuit suppressed the evidence in line with the other courts discussed above, the effect would be to deter officers from conducting *Terry* stops unless the officers could "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stops. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Furthermore, even the *White–Fletcher* line of cases involves a violation of an individual's Fourth Amendment rights by police officers. Regardless of whether the

---

**9.** Following *Kiser, O'Neal,* and *Fletcher*—where evidence was admitted despite police error, the result is that the police have little incentive to comply with the Fourth Amendment and contrarily, have an incentive to conduct *Terry* stops on weaker facts. Basically, from the police officer's perspective after *White,* as long as they are somewhere in the reasonable suspicion ballpark, the only rea-

sonable thing to do (from a law enforcement perspective) is conduct a search. The worst thing that can happen is a later court says the officer did not have reasonable suspicion, but the evidence still gets in and the prosecution moves forward. If this set of incentives complies with *Mapp* and *Leon,* the deterrence rationale is eviscerated.

officers had any bad faith, "[t]he deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused." *Peltier,* 422 U.S. at 539, 95 S.Ct. 2313. The officers in the *White–Fletcher* line of cases, as well as in *McClain,* were, at the very least negligent, and suppressing the evidence serves the purposes of the exclusionary rule and does no harm to the good-faith exception.

For these reasons, I would not adopt the Eighth Circuit's precedent.

## V.

Even if I were to adopt the Eighth Circuit's position, however,—which contradicts the reasoning of nearly every other court to address the issue—a proper application of that position in this case *still* results in suppression of the evidence and the good-faith exception does not apply. A proper application of the Eighth Circuit's precedent was conducted by the district court in *Conner,* 948 F.Supp. 821. When the illegal predicate search was a search of the defendant's dwelling place—a clearly illegal search—*O'Neal* requires suppression of the evidence and the good-faith exception does not apply. The panel, however, relegated *O'Neal* to a *but see* citation despite its being factually on all fours with *McClain.*

*O'Neal,* of course, held that "[i]f the method by which evidence supporting a search warrant is seized is clearly illegal, then even under *Leon* … evidence obtained under the resulting warrant should be excluded." 17 F.3d at 242 n. 6. There

can be no doubt at all that a warrantless search of a person's home is "clearly illegal" based on any interpretation of the Fourth Amendment. *See Payton,* 445 U.S. at 586, 100 S.Ct. 1371; *United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."); *Coolidge v. New Hampshire,* 403 U.S. 443, 474–75, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) ("[A] search carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show that it falls within one of the carefully defined set of exceptions based on the presence of 'exigent circumstances.' ").

The panel acknowledges as much. But then, the panel cites *White* to the effect that the illegal predicate search was "close enough to the line of validity," *White,* 890 F.2d at 1419, and then incomprehensibly somehow concludes that the "[t]he same is true here." *McClain,* 430 F.3d at 308. To reach this fantastic conclusion, it must resort to internally inconsistent logic and the subjective beliefs of the officers. First, it is illogical to acknowledge that the search here was *presumptively unconstitutional,* but also "close enough" to be legal. When a search is presumptively unconstitutional, the burden is placed upon the *government* to demonstrate an exception to the rule to bring the search within the Fourth Amendment. *See Coolidge,* 403 U.S. at 474, 91 S.Ct. 2022. The panel explicitly acknowledges these legal standards and then correctly rejected the government's justifications for the initial search. *McClain,* 430 F.3d at 304–06. Nevertheless, the panel then somehow concludes that this same *presumptively unconstitutional* search, a search described as the "chief evil" against which the Fourth Amendment was adopted, was somehow "close enough" to legal such that the good-

faith exception would apply. How a search goes from presumptively unconstitutional to close enough is not clear to me and I believe the panel is in error.

What is even more indefensible about the panel's conclusion that the prior warrantless search of the home was "close enough to the line of validity" is that it must resort to the officer's *subjective* beliefs to reach such a conclusion. No one can reasonably argue that any officer wouldn't know that a warrantless search of a person's home is presumptively unconstitutional. The panel certainly does not dispute this and in fact, undermines its own conclusion. In reviewing the legality of the search of McClain's residence, the panel notes that "the officers' own testimony at the suppression hearing reveals that they had no *objective* basis for their concern that a burglary was being committed at McClain's residence." *McClain*, 430 F.3d at 306 (emphasis added). Thus, the panel explicitly concedes that there was no objective basis for the officers to believe that their warrantless search of the home was lawful. Nevertheless, the majority justifies the search by stating that it found "no evidence that the officers *knew* they were violating the Fourth Amendment." *Id.* at 308 (emphasis added). The officers' subjective beliefs, however, are simply irrelevant and relying upon them to justify a search is wrong. "If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." *Beck v. Ohio*, 379 U.S. 89, 97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). That there is no evidence of bad faith or intentional violation of the Fourth Amendment is irrelevant to the outcome of this case. The panel's reliance on the officers' subjective beliefs is a grave and fundamental error. It is also logically inconsistent to conclude that the search was objectively unreasonable yet "close enough to the line of validity" to be constitutional.

Finally, the panel cites *Thomas*, from the Second Circuit, and claims that "[t]here was indeed nothing more that Officer Murphy 'could have or should have done under these circumstances to be sure his search would be legal.'" *McClain*, 430 F.3d at 308 (quoting *Thomas*, 757 F.2d at 1368). This both misinterprets the Second Circuit's analysis and is also incorrect. The focus of the Second Circuit's inquiry— on what more could have been done—is on the officer who conducts the *first* illegal search. In *McClain*, the first officers could have done plenty to make sure that their search was legal. See *McClain*, 430 F.3d at 310 (Boggs, J., concurring in the judgment) (noting that "the officer[s] could have taken other action.... [H]e could have tried, but did not, to determine who owned the house and attempt to contact him about the supposed intruder. He could have set up a barricade around the house and waited for any intruder to leave. Or he could simply have waited until he had located a judge who would sign a search warrant"). Likewise, even if the panel wishes to focus on the officer who ultimately requested the warrant, there is plenty more he could have done to bring the search within the Fourth Amendment. First and foremost, he could have avoided using evidence gained as a result of the earlier officers' presumptively unconstitutional search of the home in his affidavit for the search warrant. He could have investigated sufficiently and obtained evidence that was either from an independent source or attenuated, which would have established probable cause. A distortion of *Thomas* does not support the panel's conclusion. Although I believe that the Eighth Circuit's approach is in error, and would adopt the reasoning of the Second, Seventh, Ninth, Tenth, and Eleventh Circuits, numerous district and state courts, as well as this Court's decision in *Davis*,

even applying the Eighth Circuit's approach leads to suppression of the evidence in this case.

## VI.

For all of the reasons discussed, I believe that the panel's decision is seriously in error. I would suppress the evidence seized—i.e., the officer's visual observations—during the predicate illegal search. The proper remedy is to delete this evidence from the warrant application. In this case, however, the district court already determined that all of the additional evidence in the warrant was derivative of the illegal search and thus, poisonous fruit.[10] Severing the police officers' illegal search of the home from the subsequent surveillance and applying the good-faith exception to the subsequent surveillance is also an unacceptable outcome. To apply the good-faith exception to fruits of an illegal search—in essence, because following the initial illegality, the officers decided to play nice—would have the good-faith exception swallow the fruit of the poisonous tree doctrine. Fruits of initial illegal conduct are essentially always gathered in good faith. Likewise, as the panel did, attempting to apply the good-faith exception to the fruits by determining, perhaps on some magical sliding scale, whether the predicate illegal search was a little bit illegal (i.e., "close enough to the line of validity"), a middle amount illegal, or really illegal—even assuming it can be said that there are varying degrees of Fourth Amendment violations—strikes me as an unprincipled method of adjudication, and one that is not within the judicial competence. All the fruits, therefore, must be

suppressed. Accordingly, I would affirm the district court's judgment suppressing the evidence.

The cost to society of suppressing evidence is not an easy one to stomach. I like it no more than anyone. It would be particularly difficult to accept in this case, where several drug dealers would walk free. But, in our constitutional structure, it is a cost that society must bear. The corresponding benefit is a respect for our Fourth Amendment rights and the deterrent effect suppression would have upon police officers' misconduct. This is the balance that has been struck. We ought to enforce it. I dissent from the Court's decision not to rehear this case to correct the panel's fundamental Fourth Amendment error.

---

10. The district court found no indication that any of the evidence came from an independent source, *see Silverthorne Lumber Co.,* 251 U.S. at 392, 40 S.Ct. 182, or that the unlawful search became "so attenuated as to dissipate the taint," *Nardone,* 308 U.S. at 341, 60 S.Ct. 266, or that the evidence "would inevitably

have been discovered," *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Thus, none of these exceptions would save the other evidence included in the search warrant application, and all of the evidence must be suppressed.